**Richard E. JOHNSON, Petitioner,**

v.

**The INDUSTRIAL COMMISSION OF the STATE OF COLORADO; Mike L. Baca and Gary B. Rose, as Members of the Industrial Commission of the State of Colorado; Charles McGrath, Director of the Division of Labor; Patricia Jean Clisham, the Hearing Officer of the Department of Labor and Employment, Division of Labor, State of Colorado; Lovett Ski Corporation; and State Compensation Insurance Fund, Respondents.**

No. 86SC383.

Supreme Court of Colorado,
En Banc.

Sept. 19, 1988.

Rehearing Denied Oct. 11, 1988.

---

French & Stone, P.C., Mark M. Haynes, Boulder, for petitioner.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Michael J. Steiner, Asst. Atty. Gen., Denver, for respondent, The Indus. Com'n of the State of Colo.

Paul Tochtrop, Denver, for respondent, State Compensation Ins. Fund.

QUINN, Chief Justice.

We granted certiorari to review the decision of the court of appeals in *Johnson v. Industrial Commission*, 732 P.2d 1236 (Colo.App.1986), which construed section 8–51–101(1)(c), 3B C.R.S. (1986), to permit a workers' compensation insurer to offset against future workers' compensation disability benefits payable to a claimant one-half the amount of federal social security disability benefits received by the claimant and his dependents prior to the point at which the insurer claimed the offset. We affirm the judgment of the court of appeals.

## I.

On October 31, 1978, Richard Johnson, the claimant, injured his left hand in the course of his employment for the Lovett Ski Corporation. The injury resulted in the amputation of the middle and ring fingers and the partial amputation of the index and small fingers. Johnson filed a claim for workers' compensation benefits and Lovett's insurer, the State Compensation Insurance Fund (Fund), subsequently filed a general admission of liability. On December 8, 1978, the Fund began paying Johnson $109.33 per week in temporary total disability benefits.

Johnson, his wife, and two children also applied for and began receiving federal social security disability benefits in April

1979 and continued to receive them until September of 1980 when the benefits were terminated. The Johnsons challenged the order of termination, and in July 1981 they were awarded future social security disability benefits plus amounts due for the period of termination.

As a result of his industrial injury Johnson was provided with vocational rehabilitation services. In a report to the Fund dated October 16, 1980, Johnson's vocational rehabilitation counselor noted that Johnson and his family had been receiving social security disability benefits but that those benefits had recently been terminated. The report also stated that Johnson's wife, Marlene, was presently employed as a grocery store clerk.

On March 6, 1981, and again on July 31, 1981, the Fund sent a letter to Johnson's attorney requesting information on the status of Johnson's social security disability benefits. In April 1982, Johnson's attorney responded to these inquiries and informed the Fund of the Johnson family's receipt of social security disability benefits. Shortly thereafter, on May 11, 1982, the Fund filed a special admission of liability in which it admitted liability for Johnson's temporary total disability, but, pursuant to section 8–51–101(1)(c), 3B C.R.S. (1986), claimed an offset of $9,226.90 against any future workers' compensation disability benefits that might be awarded to Johnson. The offset claimed by the Fund represented one-half the amount of social security disability benefits received by the Johnson family from April 1978 to April 1982. Johnson contested the special admission of liability on the basis that section 8–51–101(1)(c) did not permit a retroactive offset of social security disability benefits, and, alternatively, that the equitable doctrines of estoppel and waiver operated to preclude the Fund from claiming the offset based on workers' compensation disability benefits already paid to him.

On February 28 and June 18, 1984, a hearing officer conducted a hearing on the issues of permanent disability, disfigurement benefits, and the Fund's claim of offset. Johnson's wife, Marlene, testified that three or four days after the industrial accident she telephoned the Fund in order to obtain information about applying for workers' compensation benefits. She stated that a claims adjuster told her that she, her husband, and their two children should also apply for federal social security disability benefits but did not advise her that any such benefits would be offset against any workers' compensation benefits awarded to her husband. It was Mrs. Johnson's recollection that she told one of the Fund's claims adjusters within a year after the accident of her family's receipt of social security disability benefits. She acknowledged, however, that she did not notify the Fund in writing and that she never advised the Fund of the amount of social security benefits received by the family. Mrs. Johnson also testified that in 1980, because the family was receiving both workers' compensation and social security disability benefits, she quit her job as a grocery store clerk.

Lois Lanter, a senior claims adjuster for the Fund, testified that the standard procedure in answering an inquiry about an application for workers' compensation benefits is to inform the person making the inquiry of the possible availability of federal social security disability benefits. The Fund's claims adjusters, according to Lanter, are instructed to tell claimants of the need to inform the Fund of the receipt of social security benefits and the exact amount of such benefits so that they may then be offset against the workers' compensation disability benefits. Lanter also testified that the Fund had not been aware of the Johnson family's receipt of social security benefits prior to October 1980, when the vocational rehabilitation counselor informed the Fund of that fact, and that the Fund did not exercise any right of offset at that time because the report stated that the benefits had been terminated.

The hearing officer concluded that Johnson had sustained a permanent disability of thirteen percent as a working unit and ordered the Fund to pay Johnson $20,623.95 at the rate of $84 per week commencing on March 20, 1983, and a lump sum award of $2,000 for disfigurement. With respect to

the issue of offset, the hearing officer, rejecting Johnson's claims of estoppel and waiver, determined that section 8–51–101(1)(c) authorized the Fund to offset against the workers' compensation benefits awarded to Johnson one-half the amount of social security disability benefits already received by him, exclusive of cost of living increases, but that the Fund could not offset the social security benefits paid to Johnson's wife and children. The Industrial Commission (commission) affirmed that part of the order authorizing an offset of social security disability benefits without regard to any time limitation for exercising the right of offset and further held that, contrary to the hearing officer's determination, section 8–51–101(1)(c) authorized the Fund to offset one-half the amount of aggregate social security disability benefits paid to Johnson, his wife, and their children. The commission also concluded that Johnson's claims of estoppel and waiver were without merit.

Johnson appealed the commission's order to the court of appeals, claiming that the commission had erred in not applying the doctrines of estoppel and waiver to bar the offset. The court of appeals affirmed the commission's order. The court concluded that since section 8–51–101(1)(c) established a legal right to assert an offset, "the equitable doctrine of estoppel cannot be used to circumscribe that right," and that, moreover, Johnson failed to demonstrate any detrimental reliance. *Johnson,* 732 P.2d at 1238. With respect to Johnson's invocation of waiver, the court concluded that since section 8–51–101(1)(c) contains no time limitation for asserting an offset, there was no basis to infer that the Fund voluntarily or intentionally relinquished its right to claim the statutory offset. *Id.*

We granted Johnson's petition for certiorari to consider two issues: (1) whether section 8–51–101(1)(c) authorizes an insurer to offset against future workers' compensation disability benefits payable to the claimant one-half the amount of social security disability benefits received by the claimant and his dependents prior to the point at which the insurer claimed the offset; and (2) whether the equitable doctrines of estoppel and waiver should have been applied to preclude the Fund from exercising its statutory right of offset in this case.

## II.

We first consider whether a workers' compensation insurer may offset against future workers' compensation disability benefits one-half the amount of social security disability benefits paid to the claimant and his dependents prior to the insurer's claim of offset. Section 8–51–101(1)(c), 3B C.R.S. (1986), provides in this respect as follows:

> In cases where it is determined that periodic disability benefits granted by the federal old-age, survivors, and disability insurance act are payable to an individual and his dependents, the aggregate benefits payable for temporary total disability, temporary partial disability, permanent partial disability, and permanent total disability pursuant to this section shall be reduced, but not below zero, by an amount equal as nearly as practical to one-half such federal periodic benefits; but, if provisions of the federal old-age, survivors, and disability insurance act should be amended to provide for a reduction of an individual's disability benefits thereunder because of compensation benefits payable under articles 40 to 54 of this title, the reduction of compensation benefits provided in said articles shall be decreased by an amount equal to such federal reduction.

Section 224 of the federal Social Security Act, 42 U.S.C. § 424a (1982), also contains an offset provision which is applicable to recipients of social security disability benefits who are also receiving workers' compensation disability benefits.[1]

---

1. The federal statute requires a reduction in a claimant's monthly social security disability benefits to a level at which the combined social security and workers' compensation disability benefits do not exceed 80% of the claimant's average current earnings. 42 U.S.C. § 424a(a) (1982). The federal act also provides that the reduction shall not be made if the plan under which the claimant is receiving workers' compensation disability benefits provides for an off-

Johnson argues that since section 8–51–101(1)(c) does not specifically mention the precise point at which an insurer must claim its right of offset, the statutory offset should be construed to bar any offset for workers' compensation benefits paid to a workers' compensation claimant prior to the point at which the insurer claims the offset, with the result that the offset should be limited to workers' compensation benefits payable after the insurer's exercise of the offset and only so long as the claimant continues to receive social security disability benefits. We reject such a limiting construction of section 8–51–101(1)(c).

"A court's primary task in statutory construction is to ascertain and give effect to the legislative purpose underlying a statutory enactment." *Colorado Common Cause v. Meyer*, 758 P.2d 153, 160 (Colo. 1988); *accord People v. Guenther*, 740 P.2d 971, 975 (Colo.1987); *People v. District Court*, 713 P.2d 918, 921 (Colo.1986). Because section 8–51–101(1)(c) is silent concerning the point at which the right of offset must be exercised and thus is susceptible of two alternative constructions, we should choose that construction which most closely conforms to the legislative purpose. *See Colorado Common Cause*, at 160; *Smith v. Myron Stratton Home*, 676 P.2d 1196, 1199 (Colo.1984).

The purpose of workers' compensation disability benefits is to compensate an injured worker for any loss of earning capacity resulting from a disabling industrial injury or occupational disease. *See Grover v. Industrial Commission*, 759 P.2d 705, 709 (Colo.1988); *Byouk v. Industrial Commission*, 106 Colo. 430, 433–34, 105 P.2d 1087, 1089 (1940). The disability provisions of the federal Social Security Act serve a similar purpose. *See Richardson v. Belcher*, 404 U.S. 78, 82, 92 S.Ct. 254, 257, 30 L.Ed.2d 231 (1971). If an injured worker were to receive both workers' compensation and social security disability benefits for the same disabling injury, the worker would be receiving benefits from two different sources while experiencing in fact only one wage loss. It was to prevent this duplication of benefits, as well as to coordinate the disability provisions of Colorado's workers' compensation statute with the disability provisions of the Social Security Act, that section 8–51–101(1)(c) was enacted. *See Arellano v. Director, Division of Labor*, 42 Colo.App. 149, 590 P.2d 987 (1979) (purpose of social security offset in section 8–51–101(1)(c) is to avoid double payment for disabling injury); *cf. Myers v. State*, 162 Colo. 435, 428 P.2d 83 (1967) (purpose of predecessor to section 8–51–101(1)(d), which authorizes offset for periodic disability benefits payable under an employer-financed pension plan, was to prevent an employee from receiving "double" disability benefits).

While we acknowledge that the design of workers' compensation legislation is to provide a fixed and reliable source of income to a disabled worker, *Englebrecht v. Hartford Accident and Indemnity Co.*, 680 P.2d 231, 233 (Colo.1984), we hasten to add that the offset provisions of both the Colorado workers' compensation statute and the federal Social Security Act are designed to achieve that very result. In keeping with the purpose of avoiding duplicative benefits for the same industrial injury, section 8–51–101(1)(c) mandates a reduction in workers' compensation disability benefits when the injured employee is also receiving federal social security disability benefits. There is nothing in the language or structure of Colorado's workers' compensation legislation that indicates an intent to limit the insurer's claim of offset only to benefits payable prospectively from the date on which the offset is claimed. Contrary to Johnson's assertion, we do not believe that the General Assembly's failure to delineate the point at which an insurer must exercise the right of offset signals a legislative intent to prohibit an insurer from claiming an offset on the basis of workers' compensation benefits paid to an injured worker prior to the insurer's claim of offset, when the worker and the worker's family were also receiving social security disability benefits for the same disabling

set of social security disability benefits. 42 U.S. C. § 424a(d) (1982).

injury suffered by the worker. Such a construction would fly directly in the face of the specific legislative purpose of preventing duplicative disability benefits, whether those benefits have already been mistakenly paid or are yet to be paid in the future.[2]

Johnson argues that permitting an insurer to claim an offset on the basis of workers' compensation disability benefits already paid to a claimant would conflict with section 8–53–113, 3B C.R.S. (1987 Supp.), which governs the time within which workers' compensation awards are subject to reopening and modification and further provides that no reopening shall affect "the earlier award as to moneys already paid." Because Johnson's workers' compensation claim was not yet closed at the time of the hearing on the offset, however, section 8–53–113 is not applicable to this case. Moreover, under the facts of the case, the offset ordered by the commission does not require Johnson to pay back the Fund monies previously paid to him, but, instead, results in a reduction in Johnson's future workers' compensation disability benefits. This reduction in future benefits is based on the amount by which Johnson's previously paid workers' compensation disability benefits should have been reduced in the first instance because of the social security disability benefits paid to Johnson and his dependents. Such a reduction of future workers' compensation disability benefits does not conflict with the provisions of section 8–53–113 under the particular facts present here.

Johnson also contends that allowing the offset in this case would be tantamount to allowing an insurer to withdraw its admission of liability and would thus violate section 8–53–102(2), 3B C.R.S. (1986), which states that "if any liability is admitted, payments shall continue according to admitted liability." The commission's order authorizing the offset, however, neither abrogated the insurer's admission of liability nor resulted in a discontinuation of benefits to Johnson. The commission's order merely adjusted the amount of workers' compensation disability benefits to accurately reflect the correct benefits to which Johnson was statutorily entitled. Indeed, if an insurer is prohibited from exercising the right of offset after filing an admission of liability that does not include the offset, the inevitable result would be that the claimant would receive the windfall of duplicative benefits in clear contravention of the legislative purpose underlying section 8–51–101(1)(c).

We thus construe section 8–51–101(1)(c) as authorization for an insurer to claim an offset for social security disability benefits received by a workers' compensation claimant and his or her dependents prior to the insurer's exercise of its right of offset, and as further authorization for an insurer to reduce, in appropriate circumstances, future workers' compensation disability benefits by one-half the amount of social security disability benefits received by the claimant and his or her dependents before the right of offset was invoked.

### III.

We now consider whether the doctrines of estoppel and waiver should have been applied to preclude the Fund from exercising its statutory right of offset in this case. In its decision affirming the commission's order, the court of appeals stated that the doctrine of estoppel cannot be used to circumscribe a statutory right to assert a claim and that the doctrine of waiver was

---

**2.** We recognize that courts in Florida and Louisiana have interpreted their respective statutory schemes to permit an offset of social security disability benefits against workers' compensation disability benefits only prospectively from the time the right is invoked, with the result that any excess workers' compensation disability benefits paid during the period when the offset was not taken may not be recouped. *Department of Transportation v. Lindsey,* 383 So.2d 956 (Fla.Dist.Ct.App.1980); *Lofton v. Louisiana*

*Pacific Corp.,* 423 So.2d 1255 (La.Ct.App.1982). Because the obvious purpose of section 8–51–101(1)(c), 3B C.R.S. (1986), is to prevent duplicative payments, we find these decisions unpersuasive. *See Belton v. Carlson Transport,* 714 P.2d 148 (Mont.1986) (insurer entitled to recoup excess disability benefits paid to claimant when benefits did not reflect social security offset and Montana statute specifically provided for such offset).

also inapplicable because section 8–51–101(1)(c) failed to specify any time limitation for asserting the right of offset. We believe that the court of appeals has overstated the case for precluding estoppel and waiver defenses to an insurer's assertion of its statutory right of offset.

Colorado decisional law has long recognized the principle that "[a] statute cannot stand in the way of waiver or equitable estoppel when the facts demand their application in the interest of justice and right." *Johnson v. Neel,* 123 Colo. 377, 388, 229 P.2d 939, 944 (1951) (quoting *Kalloch v. Elward,* 118 Me. 346, 108 A. 256, 258 (1919); *see also Greeley Gas & Fuel Co. v. Thomas,* 87 Colo. 486, 288 P. 1051 (1930) (employer and workers' compensation insurer estopped from invoking statute of limitations as bar to late filed workers' compensation claim); *Fanning v. Denver Urban Renewal Authority,* 709 P.2d 22 (Colo.App.1985) (landowner estopped from invoking condemnation statute as basis for claim to landowner's title to land); *Mountain Stone Co. v. H.W. Hammond Co.,* 39 Colo.App. 58, 564 P.2d 958 (1977) (subcontracting lien claimants estopped from invoking mechanics' lien statute as basis for liens, and waiver doctrine applicable to release signed by lien claimants). To the extent that statements in the court of appeals' opinion on estoppel and waiver conflict with this long-standing principle of Colorado jurisprudence, those statements are expressly disapproved.

The fact that the doctrines of estoppel and waiver might preclude the exercise of a statutory right, however, is not to imply that Johnson established his claim of estoppel or waiver in this case. A setoff is in the nature of an affirmative defense to a claim for workers' compensation disability benefits. The Fund, therefore, had the burden of demonstrating its right to a setoff. Once a prima facie case was established on the issue of setoff, the burden shifted to Johnson to prove by a preponderance of evidence that he was entitled to relief from the claimed offset on the basis of an estoppel or waiver. *See City of Boulder v. Streeb,* 706 P.2d 786, 789 (Colo. 1985) (workers' compensation claimant has

burden of proving entitlement of benefits by preponderance of evidence). It is in the context of this allocation of proof that Johnson's claims of estoppel and waiver must be evaluated.

A.

Estoppel is an equitable doctrine premised upon the principle of fair dealing and is designed to aid in the administration of justice when a rigid and inflexible application of the law would otherwise result in an injustice. *Mabray v. Williams,* 132 Colo. 523, 527, 291 P.2d 677, 679 (1955); *Sanger v. Larson Construction Co.,* 126 Colo. 479, 484, 251 P.2d 930, 933 (1952). There are four basic elements to a claim of an estoppel, all of which must be established by the party claiming the estoppel: the party to be estopped must know the relevant facts; the party to be estopped must also intend that its conduct be acted on or must so act that the party asserting the estoppel has a right to believe the other party's conduct is so intended; the party asserting the estoppel must be ignorant of the true facts; and the party asserting the estoppel must detrimentally rely on the other party's conduct. *Department of Health v. Donahue,* 690 P.2d 243, 247 (Colo.1984).

■ The record in this case supports the commission's rejection of Johnson's claim of estoppel. There is evidence in the record from which it could be reasonably inferred that the Fund did not know all the relevant facts surrounding the Johnsons' receipt of social security disability benefits until April 1982, when Johnson's attorney, in response to the Fund's letters, informed the Fund of the Johnson family's receipt of such benefits. It was on the basis of that information that the Fund asserted its claim to a setoff in the special admission of liability filed on May 11, 1982. Furthermore, the state of the record was not such that the commission was required to find that the Fund intended to mislead Johnson, or so acted as to mislead him, in the belief that he would continue to receive duplicative workers' compensation and social security disability benefits; nor was the

record such that the commission was obliged to find that Johnson was ignorant of the true fact that he was not entitled to receive duplicative workers' compensation and social security disability benefits. Finally, in light of the fact that Mrs. Johnson quit her job in 1980, the same year in which Johnson's social security benefits were temporarily terminated, we cannot say with fair assurance that it was incumbent on the commission to find that Johnson thereafter detrimentally relied on the continuation of both workers' compensation and social security payments. Under the state of the record, therefore, we conclude that the commission did not err in rejecting Johnson's claim of estoppel.

### B.

Waiver is the intentional relinquishment of a known right. *Donahue,* 690 P.2d at 247; *Ewing v. Colorado Farm Mutual Casualty Co.,* 133 Colo. 447, 452, 296 P.2d 1040, 1043 (1956). A waiver may be explicit, as when a party orally or in writing abandons an existing right or privilege, or it may be implied, as when a party engages in conduct which manifests an intent to relinquish the right or privilege or acts inconsistently with its assertion. *Donahue,* 690 P.2d at 247. A waiver thus requires full knowledge of all the relevant facts. *See Ewing,* 133 Colo. at 451–52, 296 P.2d at 1043; *Obodov v. Foster,* 105 Colo. 254, 258, 97 P.2d 426, 428 (1939).

▇ The record in the instant case undermines Johnson's contention that the commission erred in rejecting his claim of waiver. Although Johnson's vocational rehabilitation counselor sent the Fund a report in October 1980 in which he mentioned the Johnson family's receipt of social security disability benefits, the counselor also stated in that same report that those benefits had recently been terminated. As previously noted, it was not until April 1982 that the Fund was adequately informed by Johnson's attorney of the true circumstances concerning the Johnson family's receipt of benefits, and the evidence shows that approximately one month thereafter the Fund exercised its right of offset. There is nothing in this sequence of events that compels the conclusion that the Fund manifested an intent to relinquish its right of offset. Given the state of the record before us, we conclude that the commission did not err in rejecting Johnson's claim of waiver.[3]

The judgment of the court of appeals is affirmed.

---

**3.** Although we cannot say that the commission erred in rejecting Johnson's estoppel and waiver claims, we point out that an insurer should timely claim an offset once the insurer has reason to believe that a workers' compensation claimant is eligible to receive social security disability benefits, *see Hurtado v. CF & I Steel Corp.,* 168 Colo. 37, 449 P.2d 819 (1969), and the insurer's failure to do so might well support, under a different factual record, a determination that the insurer has waived, or is estopped from asserting, any claim of offset for social security disability benefits received by the workers' compensation claimant and the worker's dependents prior to the point at which the offset is claimed.