WAUSAU INSURANCE COMPANIES
and Era Helicopters, Inc.,
Appellants,

v.

Hollis VAN BIENE, Appellee.

No. S–4902.

Supreme Court of Alaska.

Feb. 26, 1993.

Carol L. Giles, and Perkins Coie, Anchorage, for appellants.

Chancy Croft, Anchorage, for appellee.

Before MOORE, C.J., and RABINOWITZ, BURKE, MATTHEWS and COMPTON, JJ.

## OPINION

RABINOWITZ, Justice.

Facts and Proceedings

Michael Brian Van Biene died in a plane crash while working as a pilot for Era Helicopters in Gulkana on August 20, 1985. It is undisputed that Van Biene died during the course and scope of his employment. Van Biene was survived by his wife Hollis, and son, Matthew.

Hollis Van Biene signed the Report of Occupational Injury or Illness required by the Alaska Workers' Compensation Act to establish entitlement to benefits for herself and her son (collectively "Van Biene"), on August 24, 1985. Wausau Insurance Companies is the workers' compensation insurer for ERA Helicopters, Inc. (collectively "Wausau"). Wausau began benefit payments five days later on August 29, 1985.[1]

On September 9, 1985 Van Biene, accompanied by a friend, met with the Wausau adjuster, Douglass Gerke, to discuss the various benefits available.[2] Gerke testified that he also advised Van Biene about the limitations that existed in regard to her benefits, including Wausau's right to receive an offset for any Social Security benefits she or her child might receive. Van Biene does not remember any details of the

---

1. In accordance with AS 23.30.215, Wausau initially calculated Van Biene's weekly death benefits to be $404.55. This determination was based on the decedent's average weekly wage during the two-year period preceding his death.

2. In 1985, Doug Gerke was the senior field claims adjustor for Wausau in the Anchorage office. His principal duty was claims investigations. At the time of his meeting with Hollis Van Biene, Gerke had handled workers' compensation cases for almost ten years, had appeared before the Workers' Compensation Board on numerous occasions and had been in the insurance adjusting field for fifteen years.

September 9th meeting.[3] The following day, Gerke sent a letter to Van Biene discussing possible reductions in her bi-weekly payments in the event that she was receiving Social Security benefits. Included was a Request for Social Security Information form which would enable Wausau to obtain information from the Social Security Administration.[4] Wausau never received an answer to its request for information.

During the September 9th meeting, Van Biene and Gerke discussed the death benefit rate and how it was calculated. Van Biene inquired whether the rate could be calculated according to her husband's "higher" wage scale during the years 1983 and 1984.[5]

At Hollis Van Biene's request, Wausau reviewed Michael Van Biene's death benefits to determine whether his current salary adequately represented his earning capacity or potential. An informal compromise adjustment was agreed on between Wausau and Van Biene which raised benefits to $454.31 per week beginning November 19, 1985. A social security offset was not deducted because Wausau did not know at that time that Van Biene was receiving social security benefits.

No further activity was taken on the Van Biene file until three years later. In January of 1988 Van Biene asked Wausau to provide a summary of her worker's compensation benefits to a mortgage company. Wausau responded with a letter indicating the current level of benefits and the length of time Van Biene could be expected to receive them. The letter stated that future payments to Hollis Van Biene would be reduced if she were to remarry, but made no mention of either a social security offset or to Wausau's right to reimbursement for past overpayments.[6]

In February of 1989, Wausau contacted Hollis Van Biene's attorney, Robert Wag-

---

3. Hollis met with Gerke two and one-half weeks after her husband's death. "I remember very little about that original meeting with him, because I was literally taken into the room hand-in-hand with our friend Tom Mockler, and I remember Tom being in most of the conversation with Mr. Gerke. I remember him saying something to me, you mind if we tape the conversation, and—and that—like I said, I remember very little about it."

4. The text of Gerke's letter of September 10, 1985 to Van Biene reads in full as follows:

 This letter follows our meeting of September 9, 1985. At that time we discussed a possible reduction in your bi-weekly benefits as a result of receiving Social Security Survivors benefits.

 So that we may determine whether or not the social security administration is taking an offset which should more properly be taken by Wausau Insurance Companies, I am attaching a Request for Social Security Information form for your completion. Please sign and date this form and return it to me in the enclosed self addressed envelope.

 When returning the form, I would appreciate your including specific information which would help us direct our correspondence to the social security administration: address of the office you are dealing with, name of the individual, claim number or any other information which would easily direct our request for information.

 If you have any questions regarding the information we will be requesting or the form itself, please feel free to contact me.

5. Two years previously, Michael Van Biene had been working as a helicopter pilot and had earned approximately $10,000.00 more per year than his wage at the time of his death. He had opted to change to Era's fixed wing air craft and was completing a two-year program which would have upgraded his rating and raised his salary to its previous level in the immediate future.

6. The full text of this 1988 letter reads as follows:

 We are the Workers' Compensation Insurance carrier handling the above captioned claim. Mrs. VanBiene [sic] received $454.31 per week in death benefits for herself ($227.16) and for Matthew ($227.16), dependent child. Mrs. VanBiene will receive these death benefits for ten (10) years unless she remarries. In the case Mrs. VanBiene remarries, she will receive a lump sum which will equal to two (2) years of her benefits. The childs [sic] benefits will continue till he is 19 years of age. The death benefits Mrs. VanBiene receives will be reduced at five (5) years to 66⅔ percent of the benefits being paid and at eight (8) years the benefits being paid will be reduced to fifty (50) percent. Matthew's will remain the same with no reduction.

 If you have any questions regarding this, please do not hesitate to contact me either by phone or letter referring to claim number and ERA Helicopters.

staff, requesting information about social security payments.[7] Wagstaff did not know at that time if Van Biene was receiving social security benefits. Gerke then wrote a letter, dated March 3, 1989, asking that Van Biene sign a release form to enable Wausau to obtain social security benefits information. Wausau subsequently requested social security information from Van Biene or her attorney on March 30, May 30, and July 14 of that same year. Wausau finally subpoenaed the information from the Social Security Administration on April 10, 1990.

Information received from the Social Security Administration verified that Van Biene was receiving social security survivor's benefits. In accordance with the provisions of AS 23.30.225(a), Wausau then reduced Van Biene's weekly death benefits from $454.31 to $319.08.[8] Wausau claims that it overpaid Van Biene $135.23 per week for 245 weeks resulting in a total overpayment of $33,131.35. Wausau subsequently petitioned the Workers' Compensation Board ("Board") to order that the Van Bienes' compensation be further reduced to $183.85 to reimburse Wausau for past overpayments.[9]

After a hearing the Board concluded that Wausau had waived its offset rights and that this waiver applied to both past and future offsets.[10] Wausau then unsuccessfully appealed to the superior court. This appeal followed.

## I. STANDARD OF REVIEW

Since the superior court acted as an intermediate court of appeal, we independently review the merits of the Board's decision. *Hester v. Public Employees' Retirement Board*, 817 P.2d 472, 474 (Alaska 1991).

## II. DOES THE WORKERS' COMPENSATION BOARD HAVE THE AUTHORITY TO EMPLOY EQUITABLE PRINCIPLES TO PREVENT AN EMPLOYER FROM ASSERTING STATUTORY RIGHTS?

■ Wausau contends that the legislature did not confer on the Board the au-

---

**7.** Hollis Van Biene filed a wrongful death action against Wausau and Era and was represented by Robert Wagstaff, attorney.

**8.** Van Biene's initial social security entitlements were for $1,172.00 per month or $270.46 per week. Wausau reduced Van Biene's weekly death benefits from $454.31 to $319.08 ($454.31–$135.23) in June 1990 per AS 23.30.-225(a), which allows an employer to reduce weekly compensation to an amount equal to one-half of the federal periodic weekly benefits.
 Alaska Statute 23.30.225(a) provides:
 When periodic retirement or survivors' benefits are payable under 42 U.S.C. 401–433 (Title II, Social Security Act), the weekly compensation provided for in this chapter shall be reduced by an amount equal as nearly as practicable to one-half of the federal periodic benefits for a given week.

**9.** Alaska Statute 23.30.155(j) provides:
 **Payment of compensation.** If an employer has made advance payments or overpayments of compensation, the employer is entitled to be reimbursed by withholding up to 20 percent out of each unpaid installment or installments of compensation due. More than 20 percent of unpaid installments of compensation due may be withheld from an employee only on approval of the board.

**10.** The Board held, in part, that Wausau's neglect in pursuing its statutory right to a social security survivor's benefit offset resulted in financial prejudice to Van Biene. This holding was based on the fact that in 1988 Van Biene relied on Wausau's statement of compensation benefits and its three year silence at the time she executed a mortgage in connection with her purchase of a new home.
 One Board member concurred that Wausau had waived its right to an offset of past social security benefits, but dissented from the Board's conclusion that Wausau had also waived its right to an offset of future social security benefits. He said:
 Although Petitioners delayed in following through with their request for the amount of SSA benefits, they should not be permanently denied a right to an offset. I believe Respondent must have or at least should have known of the possibility of the offset. Petitioners asked for the SSA information initially, and neither Respondent nor her attorney (a few years later) cooperated in providing this information. I believe someone was playing a delaying game here. Further, I question the degree of prejudice which occurred to Respondent when she made her financial commitment on her home in Washington.... A report to a mortgage company, in my opinion, does not constitute a contract guaranty.... My fellow board members are placing too much value and reliance on the report.

thority to employ equitable doctrines in order to modify statutory rights and obligations. More particularly, Wausau claims that in the instant case the Board, acting in its quasi-judicial capacity, modified the legislative scheme embodied in AS 23.30.225 and AS 23.30.155 by imposing a duty of diligent inquiry on employers and their compensation carriers. Wausau argues that the Board's powers are limited to fact finding.

Van Biene argues that many states, including Alaska, have used equitable doctrines to prevent employers from asserting statutory rights.[11] Van Biene claims this case is a particularly appropriate one for the application of equitable principles, since Wausau sat on its rights for three years and, relying upon the assurances provided by Wausau that her compensation benefits were fixed, Van Biene purchased a house.

The Alaska Workers' Compensation Board is a quasi-judicial entity. *Hood v. State, Workmen's Comp. Bd.*, 574 P.2d 811, 813 (Alaska 1978). The Board is authorized to formulate policy, interpret statutes, adopt and enforce regulations. AS 23.30.005(h). In promulgating its regulations the Board determined that an answer to a compensation claim must state whether the claim is barred "by law or equity."[12]

In deciding this issue on appeal the superior court relied on our opinion in *Smith by Smith v. Marchant Enterprises*, 791 P.2d

354, 356–57 (Alaska 1990). In that case we discussed the application of quasi-estoppel to a workers' compensation appeal. We concluded that estoppel did not apply because one of the elements of estoppel was missing under the facts in the record. Here, the superior court on appeal found that implicit in *Marchant* was this court's recognition that if all the elements were present, quasi-estoppel and equitable doctrines would have been applicable to that workers' compensation proceeding.

In 1988, the Colorado Supreme Court addressed a similar issue involving insurer offsets and equitable doctrines. *Johnson v. Industrial Comm'n of Colorado*, 761 P.2d 1140, 1144–1147 (Colo.1988). The court determined that the insurer was not precluded from exercising its statutory right of offset, four years later, after the insurer learned of Johnson's simultaneous receipt of social security survivor's benefits and workers' compensation benefits. *Id.* The Colorado Supreme Court affirmed the Industrial Commission's rejection of Johnson's estoppel claim, noting that the statutes were silent concerning the point at which the right of offset must be exercised and that the purpose of the legislative enactments was to avoid duplicative benefits.[13] *Id.* The Colorado court did speak directly to the equitable principles issue. It acknowledged that the doctrines of es-

---

**11.** *McKaskle v. Industrial Comm'n of Arizona,* 135 Ariz. 168, 659 P.2d 1313 (App.1982) (equitable estoppel used to reverse administrative law judge's decision dismissing claim as untimely); *Davis v. Jones,* 203 Mont. 464, 661 P.2d 859, 861 (1983) (Montana Workers' Compensation Board applied equitable estoppel to case untimely filed); *Ex parte Jack Youngblood,* 413 So.2d 1146 (Ala.1981) (running of statute of limitations estopped even where misleading statements of employer were made in good faith).

**12.** **8 AAC 45.050. PLEADINGS.** (c)(3)(C) provides:
(c) Answers
(3) All answers must be simple in form and language. Answers must state, when applicable

. . . . .

(C) whether the claim is barred under AS 23.30.100, AS 23.30.105, or otherwise barred by law **or equity** ....

**13.** The Colorado Supreme Court stated:

The purpose of workers' compensation disability benefits is to compensate an injured worker for any loss of earning capacity resulting from a disabling industrial injury or occupational disease.... The disability provisions of the federal Social Security Act serve a similar purpose.... If an injured worker were to receive both workers' compensation and social security disability benefits for the same disabling injury, the worker would be receiving benefits from two different sources while experiencing in fact only one wage loss. It was to prevent this duplication of benefits, as well as to coordinate the disability provisions of Colorado's workers' compensation statute with the disability provisions of the Social Security Act that section 8–51–101(1)(c) was enacted.
*Johnson v. Industrial Comm'n of Colorado,* 761 P.2d 1140, 1144 (Colo.1988) (citations omitted).

toppel and waiver might preclude the exercise of a statutory right.[14] *Id.* at 1146.

The Colorado court characterized the set-off as in the nature of an affirmative defense to a claim for workers' compensation benefits, and concluded that "once a prima facie case was established on the issue of setoff," the burden shifted to Johnson to prove "by a preponderance of the evidence that he was entitled to relief from the claimed offset on the basis of an estoppel or waiver." *Id.*

On the basis of *Marchant* and the preceding discussion we hold that the Board possesses the authority to invoke equitable principles to prevent an employer from asserting statutory rights.

### III. IS THERE SUBSTANTIAL EVIDENCE IN THE RECORD TO SUPPORT THE BOARD'S APPLICATION OF EQUITABLE ESTOPPEL, IMPLIED WAIVER, AND LACHES IN DENYING WAUSAU ANY SETOFF (OR REIMBURSEMENT) FOR SOCIAL SECURITY SURVIVOR'S BENEFITS RECEIVED BY VAN BIENE?

The Board concluded that Wausau impliedly waived its right to take a social security offset to both past and future workers' compensation benefits. In so doing the Board relied on the doctrine of waiver articulated in *Milne v. Anderson,* 576 P.2d 109, 112 (Alaska 1978) where we said:

An implied waiver arises where the course of conduct pursued evidences an intention to waive a right, or is inconsistent with any other intention than a waiver, or where neglect to insist upon the right results in prejudice to another party. . . . To prove an implied waiver of a legal right, there must be direct, unequivocal conduct indicating a purpose to abandon or waive the legal right, or acts amounting to an estoppel by the party

whose conduct is to be construed as a waiver.

*Id.* at 112 (citations omitted).

The Board found that there was no express waiver of the right to a social security offset by Wausau. The Board determined, however, that there had been an implied waiver. It stated:

We find, under the facts of this case, that Petitioners impliedly waived their right to take a social security offset of both past and future workers' compensation benefits. Specifically, we find, under one of the alternative tests in *Milne,* that although Petitioners initially asserted their right to the SSA offset, their subsequent neglect in bringing up the offset during any ensuing discussions with Respondent resulted in prejudice to Respondent. Although Mr. Gerke recalls discussing the SSA offset with attorney Wagstaff, he was unable to recall dates, times and content of the conversations.

 The Board concluded that although Wausau initially asserted its right to the offset, Wausau's subsequent neglect in pursuing the offset for three years resulted in prejudice to Van Biene. In addition, the Board decided that Wausau should be estopped from taking any social security survivors' benefits offset. In making this determination the Board referred to elements of estoppel alluded to in *Jamison v. Consolidated Utilities,* 576 P.2d 97, 102 (Alaska 1978). These elements are: assertion of a position by word or conduct, reasonable reliance thereon by another party, and resulting prejudice. The Board determined that Van Biene could not have relied on any express statements regarding social security offsets because she did not learn of the possibility of any such offsets until 1989. The Board nevertheless found reasonable reliance on Van Biene's part based on its conclusion that she could have relied on her discussion with Gerke on the appropriate compensation rate, the resulting compromise in the rate, and Wausau's long period of inactivity before it finally was

---

**14.** The Colorado court said:
[a] statute cannot stand in the way of waiver or equitable estoppel when the facts demand their application in the interest of justice and right.
761 P.2d 1140 at 1146.

successful in obtaining information regarding Van Biene's social security benefits. Further the Board found that Hollis Van Biene was prejudiced "when she relied on ... [Wausau's] statements, on her compensation rate and assertions to the lending company, in making her financial commitment to buy a home." [15]

The type of implied waiver created by neglect to insist upon a right is, in reality, a type of equitable estoppel. This is implied in the language from *Milne v. Anderson* quoted above in that "prejudice to another party" is required as well as "acts amounting to an estoppel by the party whose conduct is to be construed as a waiver." As one key element of estoppel is communication of a position, it follows that neglect to insist upon a right only results in an estoppel, or an implied waiver, when the neglect is such that it would convey a message to a reasonable person that the neglectful party would not in the future pursue the legal right in question.

Our review persuades us that there is an absence of substantial evidence in the record to support the Board's holdings that application of the doctrines of implied waiver and estoppel preclude Wausau from obtaining setoffs or reimbursements for past or future social security benefits received, or to be received, by Van Biene. Of particular significance to our determination is the fact that Van Biene was apprised by Wausau, both orally and in writing, that worker's compensation benefits would be reduced by offsets in the event that she received social security survivor's benefits. Also of importance is the fact that no representations were made by Wausau to Hollis Van Biene that it would not seek to offset social security survivor's benefits in the event that she received such payments.

We conclude, therefore, that a finder of fact could not reasonably find that a person in the position of Van Biene could reasonably interpret Wausau's conduct as amounting to an implied communication that no social security offset would be required. At best, such conduct subsequent to Gerke's conversation and letter indicates only neglect or an internal mistake. We therefore conclude that the Board lacked substantial evidence to support its invocation of implied waiver and estoppel against Wausau's attempts to assert its statutory rights to social security survivors' benefit offsets as well as reimbursement for overpayments of compensation made to Van Biene.

REVERSED and REMANDED to the superior court with directions to REMAND to the Board for further proceedings consistent with this opinion.

---

15. Relying on our analysis of the doctrine of laches found in *Pavlik v. State,* 637 P.2d 1045, 1047 (Alaska 1981) the Board held that application of laches bars Wausau from obtaining the benefit of any social security benefits offset. As indicated earlier in this opinion Wausau's claim to social security benefit offsets is based on the provisions of AS 23.30.225(a) and its claim to reimbursement for overpayments of compensation is predicated on AS 23.30.155(j).

Given that Wausau is attempting to assert its statutory (legal) based rights to offsets and reimbursements we conclude that laches is inapplicable. Laches is an equitable defense inapplicable to actions at law. *Gudenau v. Bang,* 781 P.2d 1357, 1363 (Alaska 1989); *Kodiak Elec. Ass'n v. Delaval Turbine, Inc.,* 694 P.2d 150, 157 (Alaska 1985).