Timothy DENUPTIIS, Appellant,

v.

UNOCAL CORPORATION and the Alaska Workers' Compensation Board, Appellee.

No. S-10098.

Supreme Court of Alaska.

Jan. 31, 2003.

---

Joseph A. Kalamarides, Randall S. Cavanaugh, Kalamarides & Lambert, Inc., Anchorage, for Appellant.

Richard L. Wagg, Russell, Tesche, Wagg, Cooper & Gabbert, Anchorage, for Appellee Unocal Corporation.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, and CARPENETI, Justices.

*OPINION*

MATTHEWS, Justice.

The main question presented is whether the Workers' Compensation Board erred in applying a clear and convincing standard of proof to an employer's claim for reimbursement of benefits based on fraud. We conclude that it did. Alaska Statute 44.62.460(e) directs that the standard of proof in administrative hearings be by a preponderance of the evidence, unless applicable law specifies a different standard. As no statute or rule relating to reimbursement claims addresses the issue of what standard of proof is appropriate, the default standard of this section applies.

## I. FACTS AND PROCEEDINGS

Timothy DeNuptiis was injured while working for Unocal in September 1996. An accident on an oil platform left him unable to work for several periods in 1996 and 1997 due to pain in his neck, wrist, and lower back. Unocal paid $700 per week in temporary total disability benefits from September 9 to October 13, 1996; December 13 to December 15, 1996; and May 12 to October 19, 1997.

In November 1997 Unocal filed a controversion notice with the Alaska Workers' Compensation Board, claiming that it had collected evidence on several surveillance videotapes "that [DeNuptiis] is exaggerating his claims to obtain benefits." Unocal further

explained that "[DeNuptiis] has been determined able to return to work as of 6–8–97 based on the report of Dr. Brockman," an orthopedic surgeon who examined DeNuptiis at Unocal's request. Unocal stated that it was "pursuing recovery pursuant to AS 23.30.250."

Alaska Statute 23.30.250(a) imposes civil liability and criminal penalties for knowing false statements in workers' compensation cases.[1] Subsection .250(b) authorizes the board to order reimbursement of fraudulently obtained benefits and costs and fees incurred in obtaining reimbursement and in defending any claim for benefits:

> If the board, after a hearing, finds that a person has obtained compensation, medical treatment, or another benefit provided under this chapter by knowingly making a false or misleading statement or representation for the purpose of obtaining that benefit, the board shall order that person to make full reimbursement of the cost of all benefits obtained. Upon entry of an order authorized under this subsection, the board shall also order that person to pay all reasonable costs and attorney fees incurred by the employer and the employer's carrier in obtaining an order under this section and in defending any claim made for benefits under this chapter. If a person fails to comply with an order of the board requiring reimbursement of compensation and payment of costs and attorney fees, the employer may declare the person in default and proceed to collect any sum due as provided under AS 23.30.170(b) and (c).[2]

█ Neither subsection specifies a standard of proof. Unocal argued before the board that it should apply the preponderance standard. DeNuptiis advocated the higher clear and convincing standard.[3]

1. AS 23.30.250(a) provides:
 A person who . . . knowingly makes a false or misleading statement, representation, or submission related to a benefit under this chapter . . . is civilly liable to a person adversely affected by the conduct, is guilty of theft by deception as defined in AS 11.46.180, and may be punished as provided by [the sentencing provisions] AS 11.46.120—11.46.150.

2. AS 23.30.250(b).

3. The difference between the two standards is as follows:
 Where one has the burden of proving asserted facts by a preponderance of the evidence, he must induce a belief in the minds of the jurors that the asserted facts are probably true. If clear and convincing proof is required, there must be induced a belief that the truth of the asserted facts is highly probable.

The board concluded that clear and convincing was the appropriate standard to be used in section .250 claims. Noting that Unocal's charge was essentially that DeNuptiis was malingering to obtain benefits, the board quoted and agreed with Professor Larson's recommendation that malingering should be found "only upon positive and convincing evidence":

> [A] heavy burden should be upon the party that alleges malingering.... There are several reasons for such a rule. One is that a mistaken inference here works a particularly severe hardship, for if the claimant is in fact genuinely disabled, he or she suffers the double blow of being deprived of compensation and of being publicly labeled a liar and a cheat. Another is the pervading remedial character of [workers' compensation] legislation. Still another is the imperfect state of medical knowledge in many of the fields here involved, in spite of spectacular advances in recent decades.[4]

The board also supported its conclusion with a number of reasons:

> [W]e find a § 250 petition is criminal in nature. The statute provides for punishment under AS 11.46.180, theft by deception. Second, the implications of our finding a § 250 petition violation has severe and serious financial implications under § 250(b). Third, a stigma is associated with an individual being labeled a "malinger[er]" or "liar" or the like. Next, from a policy perspective, proving a mere preponderance of evidence to terminate all benefits under a § 250 petition does not strike a chord of fairness; employers have much greater resources with which to investigate. Finally, the elements of a § 250 petition should be more difficult to prove to avoid the use of § 250 as a sword to coerce an employee every time a minor inconsistency in the evidence is found.

The board then proceeded to evaluate the evidence based on the clear and convincing standard. It concluded that Unocal had failed to prove that DeNuptiis had made knowingly false statements in support of his benefits claim and denied Unocal's request for reimbursement. But two of the three board members filed a separate statement indicating that if the preponderance of the evidence standard had been used they would have found in favor of Unocal.

Unocal petitioned for reconsideration on the standard of proof issue. The board granted reconsideration but reaffirmed its earlier ruling:

> Having granted reconsideration, we now consider whether our decision in *DeNuptiis II* adopting the "clear and convincing" standard of proof was proper. For the reasons detailed below, we reaffirm our decision that the standard should be "clear and convincing" evidence. We have considered the employer's argument and reviewed the applicable caselaw. Nevertheless, we continue to find the criminal sanctions provided under a § 250 petition, and the ramifications therein, mandate a higher standard of proof than "preponderance of the evidence." The caselaw on which the employer relies is civil and does not have criminal sanctions intertwined.
>
> Furthermore, an employee enjoys the presumption of compensability. AS 23.30.120. Therefore, we find it would be inconsistent .to authorize an employer to unilaterally cease payments of benefits on an alleged violation of § 250, based on a preponderance of evidence. Utilizing such a standard would run contrary to the provisions of AS 23.30.120 which protect an injured worker from having his or her benefits terminated. Therefore, we find a higher standard of proof is required.

Unocal appealed to the superior court. On appeal, Superior Court Judge Karen L. Hunt ruled that the board should have used a preponderance of the evidence standard of review. Judge Hunt reasoned that subsection (b) of section .250 is a civil remedial provision and that while it contains no indica-

---

*Spenard Action Comm. v. Lot 3, Block 1, Evergreen Subdivision*, 902 P.2d 766, 774 n. 15 (Alaska 1995) (citations omitted).

4. 2 A. LARSON, THE LAW OF WORKMEN'S COMPENSATION § 42.24(d) (1994) (citation omitted) (now 3 A. LARSON, WORKERS' COMPENSATION LAW § 56.05[4] (1999)).

tion as to what standard of proof should be used, civil fraud in Alaska, in the absence of statute, has traditionally been proved using a preponderance of the evidence standard.[5] Judge Hunt also relied on AS 44.62.460(e), a subsection of the Administrative Procedure Act, that calls for a preponderance of the evidence standard of proof "unless a different standard of proof is stated in the applicable law." Judge Hunt found that reimbursement claims were governed by this provision.

On remand from the superior court's decision, the board concluded by a two-to-one margin that Unocal had shown by a preponderance of the evidence that DeNuptiis "knowingly made false and misleading statements to obtain benefits." On appeal to the superior court, Judge Fred Torrisi ruled that Judge Hunt's earlier decision on the standard of proof was the law of the case. He found that the board's decision was supported by substantial evidence and affirmed it. This appeal followed.

## II. DISCUSSION

### A. The Standard of Proof To Be Used in Reimbursement Claims Is the Preponderance of the Evidence Standard.

 The question of what standard of proof applies to a given issue in a given case is a question of law. Ordinarily we use our independent judgment on questions of law unless the "issue involves agency expertise or the determination of fundamental policy questions on subjects committed to the agency."[6] If the issue involves agency expertise or fundamental policy questions, we review under the reasonable basis standard and defer to the agency if its interpretation is reasonable.[7] We believe that the board's deci-

sion to apply a clear and convincing standard of proof is a policy decision that should be reviewed deferentially. The board found that the clear and convincing standard was necessary to prevent the threat of a reimbursement suit from being used for coercive purposes against an employee. In effect, the board decided that the heightened standard of proof was necessary to maintain a fair balance between the interests of employees and those of employers. This is a policy determination.

Further, the board has been delegated broad powers to administer the Workers' Compensation Act. "The Board is authorized to formulate policy, interpret statutes, adopt and enforce regulations."[8] Specifically, the Department of Labor may adopt, subject to approval by a majority of the board, "rules for all panels; and ... regulations to carry out the provisions of [the Workers' Compensation Act]."[9] In conducting a hearing, "the board is not bound by common law or statutory rules of evidence or by technical or formal rules of procedure, except as provided by [the act]."[10] Further, the board has been delegated the authority to "conduct its hearings in the manner by which it may best ascertain the rights of the parties."[11] Since the board's decision to use a clear and convincing standard of proof was policy-based and concerned a subject that is within the general authority of the board, we will uphold the decision of the board if it can be said to be a reasonable interpretation of governing law.[12]

A subsection of the Administrative Procedure Act, AS 44.62.460(e)(1), calls for a default standard of proof by a preponderance of the evidence in cases where another standard

---

5. Judge Hunt cited *Gabaig v. Gabaig*, 717 P.2d 835, 838–39 (Alaska 1986) and *Saxton v. Harris*, 395 P.2d 71, 72 (Alaska 1964).

6. *O'Callaghan v. Rue*, 996 P.2d 88, 94 (Alaska 2000).

7. *Id.; Lakosh v. Alaska Dep't of Envtl. Conserv.*, 49 P.3d 1111 (Alaska 2002).

8. *Wausau Ins. Cos. v. Van Biene*, 847 P.2d 584, 587 (Alaska 1993).

9. AS 23.30.005(h).

10. AS 23.30.135(a).

11. *Id.*

12. *O'Callaghan*, 996 P.2d at 94; *Mukluk Freight Lines, Inc. v. Nabors Alaska Drilling, Inc.*, 516 P.2d 408, 411–12 (Alaska 1973).

of proof is not set by applicable law: "Unless a different standard of proof is stated in applicable law the (1) petitioner has the burden of proof by a preponderance of the evidence. . . ."

This section applies to hearings before the Workers' Compensation Board. Alaska Statute 44.62.330(a)(15) includes the Alaska Workers' Compensation Board within the coverage of the Administrative Procedure Act "where procedures are not otherwise expressly provided by the Alaska Workers' Compensation Act." In a number of cases we have recognized the application of other rules specified in AS 44.62.460 to workers' compensation proceedings.[13]

■ Based on the board's delegated rule-making authority, the board could adopt a rule that the standard of proof in reimbursement proceedings should be by clear and convincing evidence. Such a rule could reasonably fall within the excepting language of AS 44.62.460(e) as "a different standard of proof . . . stated in applicable law." But no such rule exists and in its absence subsection .460(e)(1) governs.[14] We therefore conclude that the board's application of the clear and convincing standard in the present case was not a reasonable interpretation of governing law.

## B. The Preponderance Standard Is Not Unconstitutional.

■ DeNuptiis argues that applying a preponderance of the evidence standard is unconstitutional on due process and equal protection grounds. His premise as to both grounds is that AS 23.30.250(b) remedy is penal, and that because of this, a heightened standard of proof is required. But this premise is incorrect, as subsection .250(b) only requires restitution of benefits that were fraudulently obtained and reimbursement of the employer's expenses occasioned by the fraud.[15]

■ Due process does require a heightened standard of proof in certain categories of civil cases. Thus in *Santosky v. Kramer*[16] the United States Supreme Court held that a standard at least as demanding as clear and convincing evidence was necessary in termination of parental rights cases. Similar elevated standards are necessary in involuntary civil commitments,[17] deportation proceedings,[18] and denaturalization proceedings.[19] Each of these categories involves sensitive liberty interests and each involves attempts by the government to deprive individuals of such interests. By contrast, the United States Supreme Court has held that the preponderance of the evidence standard is adequate in paternity cases where the main interest of the putative father is avoiding the "serious economic consequences" that flow

13. *See Whaley v. Alaska Workers' Compensation Bd.*, 648 P.2d 955, 957–58 (Alaska 1982); *Commercial Union Cos. v. Smallwood*, 550 P.2d 1261, 1266–67 (Alaska 1976); *Employers Commercial Union Ins. Group v. Schoen*, 519 P.2d 819, 823–24 (Alaska 1974); *Cook v. Alaska Workmen's Compensation Bd.*, 476 P.2d 29, 31 (Alaska 1970).

14. Assuming that "applicable law" might reasonably include a well-established decision law principle as to the applicable standard of proof, we note that there is no well-established principle in Alaska that civil fraud claims are governed by a clear and convincing standard. To the contrary, our common law decisions require only a preponderance of the evidence. *Dairy Queen of Fairbanks, Inc. v. Travelers Indem. Co. of America*, 748 P.2d 1169 (Alaska 1988); *Gabaig v. Gabaig*, 717 P.2d 835, 838 (Alaska 1986); *Saxton v. Harris*, 395 P.2d 71 (Alaska 1964). Further, it seems that in the only board ruling, the board employed a preponderance of evidence standard to a reimbursement claim, although neither party argued that a higher standard should have been

employed. *Gourley v. Qwick Constr.*, AWCB Decision No. 97–0255 (December 15, 1997).

15. The caption to section .250 is "Penalties for fraudulent or misleading acts." But captions are not part of the statute. *See* AS 01.05.006; *Ketchikan Retail Liquor Dealers Ass'n v. State, Alcoholic Beverage Control Bd.*, 602 P.2d 434, 438 (Alaska 1979) ("[H]eadings are not part of the law of Alaska."), *modified on other grounds by* 615 P.2d 1391 (Alaska 1980).

16. 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982).

17. *Addington v. Texas*, 441 U.S. 418, 425, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979).

18. *Woodby v. Immigration & Naturalization Servs.*, 385 U.S. 276, 277, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966).

19. *Chaunt v. United States*, 364 U.S. 350, 353, 81 S.Ct. 147, 5 L.Ed.2d 120 (1960).

from a court order establishing paternity.[20] The United States Supreme Court has also observed that in a civil case between private parties involving a monetary dispute a preponderance of the evidence standard is adequate: "The typical civil case involves a monetary dispute between private parties. Since society has a minimal concern with the outcome of such private suits, plaintiff's burden of proof is a mere preponderance of the evidence. The litigants thus share the risk of error in roughly equal fashion."[21]

■ Due process does not require an elevated standard of proof in every civil proceeding involving non-monetary liberty interests. We held in *Disciplinary Matter of Walton* that employing a preponderance standard in attorney disciplinary proceedings satisfied due process: "[W]e are unwilling to hold that the risk of an incorrect factual determination in a bar disciplinary proceeding should be placed primarily on the public. Because there are substantial interests on both sides, the risk of error should be borne equally."[22]

■ The usual construct for determining whether a standard of proof is appropriate is that suggested by *Mathews v. Eldridge*.[23] Three factors are considered:
the private interest affected by the official action; the risk of an erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the fiscal and administrative burdens that additional or substitute procedural requirements would entail.[24]

In considering these factors a strong presumption of validity must be afforded to the legislature's choice as to the appropriate standard.[25]

■ The *Mathews* factors are directly aimed at cases involving litigation between the government and a private individual. Adapting them to this case, they do not point to a conclusion that the preponderance standard is unconstitutional. The interest of the litigants on both sides is primarily monetary.[26] It is not fundamentally unfair that they share the risks of an erroneous decision roughly equally. Of course substitute safeguards might be applied. A more demanding standard could be imposed on the employer. While as a matter of policy this might be a wise choice, we are unable to say that it is constitutionally required. The parties' main interests are economic and their interests are equal in the eyes of the law. Further, a worker's economic interests do not stand on a higher footing than the economic interests of any litigant against whom a civil fraud claim is brought. As noted, in civil fraud cases we have applied a preponderance standard.[27] There are at least two governmental interests involved. The first is the interest that underlies the workers' compensation system: making adequate compensation available to injured workers expeditiously and without undue cost. The second is to deter and redress fraud.[28] In the context of

20. *Rivera v. Minnich*, 483 U.S. 574, 580–81, 107 S.Ct. 3001, 97 L.Ed.2d 473 (1987).

21. *Id.* at 578 n. 5, 107 S.Ct. 3001 (quoting *Addington*, 441 U.S. at 423, 99 S.Ct. 1804).

22. 676 P.2d 1078, 1085 (Alaska 1983) (footnote omitted).

23. 424 U.S. 319, 332, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

24. *Keyes v. Humana Hosp. Alaska, Inc.*, 750 P.2d 343, 353 (Alaska 1988).

25. *Rivera*, 483 U.S. at 578, 107 S.Ct. 3001.

26. A worker might suffer some degree of harm to his reputation if the board were to find that he obtained benefits fraudulently. However, a worker's reputational interest is not so funda-

mental that it must be protected by a heightened standard. The potential taint to an worker's reputation is no worse than the taint suffered by any civil litigant found liable for fraud. Additionally, the reputational interests of medical or legal professionals can be substantially harmed if they are found liable for malpractice, yet such proceedings employ a preponderance standard. *See Kaiser v. Sakata*, 40 P.3d 800, 805 n. 16 (Alaska 2002); *Shaw v. State, Dep't of Admin.*, 861 P.2d 566, 572 (Alaska 1993); and *Dairy Queen of Fairbanks, Inc. v. Travelers Indem. Co. of America*, 748 P.2d 1169, 1171 (Alaska 1988).

27. *See* cases cited note 14 *supra*.

28. *See Dairy Queen*, 748 P.2d at 1172 (noting "compelling" public policy reasons for applying preponderance standard in cases of arson and false swearing).

this dispute these goals point in opposite directions; they are sufficiently balanced as not to dictate any particular conclusion on the question before us.

Considering, then, the three *Mathews* factors, the presumption of statutory validity, the standard we use in civil fraud cases, and the nature of the civil cases in which a heightened standard of proof has been found to be constitutionally required, we conclude that employing a preponderance standard in subsection .250(b) cases does not violate due process.

■ DeNuptiis's equal protection arguments are that persons subject to subsection .250(a) have more protection than workers subject to subsection .250(b), and that taxpayers subject to civil fraud claims have the protection of a clear and convincing evidence standard.[29] But the premise of the argument concerning persons subject to subsection .250(a) is false, for there is no reason to think that those who are merely civilly liable under subsection .250(a) are in fact protected by a clear and convincing evidence standard. Based on our case law, we assume that the standard of proof in such cases would be by a preponderance of the evidence.[30] Likewise, DeNuptiis's argument that taxpayers accused of fraud are protected by a clear and convincing standard is unavailing to show a denial of equal protection. Taxpayers are subject to penalties in addition to the amount

of taxes they owe,[31] whereas the subsection .250(b) remedy is limited to restitution and reimbursement.

### C. Appellant's Other Points Lack Merit.

■ DeNuptiis also argues that the board's decision is not supported by substantial evidence in general or in particular with respect to the termination date for his benefits. While there is conflicting evidence concerning whether DeNuptiis knowingly made a false statement or representation in order to obtain benefits, there is substantial evidence to support the board's decision.[32]

■ DeNuptiis's last argument is that instead of a June 7, 1997 cut-off date for his benefits, the board should have used November 12, 1997, the date on which two doctors formally expressed their opinions that he was malingering. But the board's use of June 7, 1997, is based on substantial evidence. That was the date that DeNuptiis was videotaped participating in various activities in which he exhibited no irregular neck posture. Dr. Brockman testified that DeNuptiis was at that point healthy enough to go back to work.

### III. CONCLUSION

We conclude that Judge Hunt correctly remanded this case to the board with instruc-

---

**29.** DeNuptiis cites 15 Alaska Administrative Code (AAC) 05.230(d).

**30.** Of course, subsection .250(a) is also a criminal statute. Persons accused of the crime it defines are protected by a standard of proof beyond a reasonable doubt. This differential treatment is justified by the risk of criminal sanctions.

**31.** 15 AAC 05.230(b) imposes a fifty percent penalty calculated on the tax deficiency.

**32.** DeNuptiis argues that the evidence presented is consistent with his claim of injury. He asserts the evidence shows only that he had "good and bad days." He points to the testimony of other witnesses at the hearing that they saw DeNuptiis in pain.

DeNuptiis did present evidence of an injury. Dr. Kufel and Jeanette Lawson reported objective evidence of an injury to DeNuptiis's neck.

Jeannette Lawson testified that DeNuptiis's biofeedback test results were consistent with his reports of pain, and that those results would be very difficult to falsify. At the same time, however, the videotapes showed that DeNuptiis's condition changed dramatically, sometimes within only a short time after he reported worsening pain. Dr. Kufel's testimony showed, for example, that DeNuptiis represented his injury as "getting worse" just two days before he was filmed exhibiting a full range of motion. Drs. Brockman and James testified that there was no physiological reason to explain these inconsistencies between DeNuptiis's appearance at the clinics, at the deposition, and on the surveillance tapes. Dr. James opined that DeNuptiis was malingering. Dr. Brockman opined that they could only be explained by a "[m]iraculous cure."

tions to employ a preponderance of the evidence standard, that this standard is constitutional, and that the board's decision on remand from Judge Hunt's order is supported by substantial evidence. The decision of the superior court affirming that decision is therefore AFFIRMED.

BRYNER, Justice, not participating.