William E. STRACK and Vera N. Strack, Appellants,

v.

Robert G. MILLER, Appellee.

No. 5730.

Supreme Court of Alaska.

May 21, 1982.

Edward R. Niewohner, Fairbanks, for appellants.

J. L. McCarrey, III, McCarrey & McCarrey, Anchorage, for appellee.

Before RABINOWITZ, C. J., and CONNOR, BURKE, MATTHEWS and COMPTON, JJ.

OPINION

CONNOR, Justice.

This appeal arises from William and Vera Strack's unsuccessful suit against Robert Miller for a decree of specific performance on a land sale contract. The Stracks contend that the trial judge erred in denying specific performance of an unexecuted written "Contract for Deed" and, alternatively, that the trial judge erroneously enforced a forfeiture when he should have allowed a grace period for compliance.

In June 1975, William Strack orally agreed to purchase from Miller approximately 109 acres of real property in Manley Hot Springs, Alaska. The price was set at $140,000. According to Strack, there "wasn't too much discussion" about the payment terms; he expected to pay off the debt with whatever he could get from the sale of some land owned by him in Fairbanks. Miller, on the other hand, testified that the property was worth substantially more than $140,000, but that he agreed to accept that price for cash.

The Stracks borrowed $10,000, which was given to Miller in June 1975 as a partial payment. The Stracks at that time assumed possession of the premises. In December 1976, the Stracks sold their Fairbanks property to Grasle Electric Company (Grasle). Of the $26,000 cash down payment, $10,000 was used to retire the bank loan taken out the previous year and $16,000 was paid to Miller. The Stracks also received from Grasle a promissory note in the amount of $115,000 secured by a First Deed of Trust, payable at the rate of $1,250 a month.

On December 31, 1976, Miller went to Eugene Belland's law office and requested that he draft documents to memorialize the agreement between Miller and the Stracks. Belland prepared a "Contract for Deed," an "Assignment of Beneficial Interest" from the Stracks to Miller of the Grasle Deed of Trust and Promissory Note and a second "Assignment of Beneficial Interest" of the Grasle Deed of Trust and Promissory Note from Miller to the First National Bank of Fairbanks. These documents were prepared in accordance with Miller's voluminous notes dealing with the agreement and the property in general.

The written "Contract for Deed" described the property, set forth the total sales price of $143,010, provided for interest at 10.5%, and called for monthly payments by the Stracks to Miller of $1,250. The "Contract for Deed" did not specify when these monthly payments were to begin. The notes Miller gave to Belland make no mention of monthly payments; a clause for payment in full by August 1, 1976, is included in one of two paragraphs which are crossed out in these notes. However, the attorney testified that Miller told him to draft a document calling for monthly payments of $1,250 on the unpaid balance. Miller denied giving such an instruction, and insisted that he always intended to receive cash. Miller never signed the "Contract for Deed," but he did sign the assignment to him of the Grasle Deed of Trust. In the following months, William Strack made several trips to Fairbanks in a fruitless attempt to obtain Miller's signature on the "Contract for Deed."

By mid-1978, Miller had made it clear to the Stracks that he wanted his payment in cash since his bank had begun to pressure him for payments on substantial loans. Sometime after March 1978, Strack attempted to borrow a large sum of money from his bank, but was told that his income was insufficient for the size of the loan contemplated. Miller testified that in late 1978, in an effort to raise the cash, he unsuccessfully attempted to sell the Stracks' interest in the Grasle Deed of Trust to various potential buyers in the Fairbanks area.

In early 1979, Vera Strack became concerned that the matter had not been settled and took over the dealings with Miller. She testified that she met with Miller at least six times during 1979 and reached an agreement to sell portions of the property and turn over the cash to Miller. One such sale was consummated and Miller received $6,000 on August 15, 1979, bringing his total

monies received up to $32,000. Additional sales totalling $45,000 had been lined up by Vera Strack, and her attorney prepared the deeds for these sales in October and November. She also spoke with her bank and the Small Business Association in attempts to borrow more money. On August 22, 1979, Miller wrote Vera Strack a letter expressing a desire to "still go through exactly as per our original agreement" and pointing out that his obligation at the bank would be due on December 1, 1979. Attached to the letter was an accounting which showed the amount still due as $168,-995.

On November 20, 1979, the Stracks' attorney met with Miller and tendered $29,000 on their behalf, purporting to bring current the monthly payments according to the schedule in the unexecuted document. Miller refused the tender of the checks and refused to convey title on that basis. The Stracks instituted this lawsuit for specific performance of the unexecuted "Contract for Deed." Meanwhile, the Stracks were in possession of the property from June of 1975 through the completion of the superior court trial in December of 1980. During that time, William Strack built a new generator building and a shop, put in underground and above-ground storage tanks, and began a propane distributorship. Vera Strack did landscaping and had the property surveyed in order to have a legally adequate property description in their deed and the portions she was attempting to sell.

The trial court found that the parties orally contracted for the sale of the property and found the terms of the sale as originally agreed upon to be the sum of $140,000 for the real property and $12,511 for personal property. The court further found that the oral understanding of the parties was never reduced fully to a writing, and that the payment at all times was to be in cash, Miller never having agreed to accept payment of the purchase price over a period of years. The court, therefore, concluded that the Stracks were not entitled to specific performance of the unexecuted "Contract for Deed," and that the Stracks were in default under the terms of the oral agreement by failing to pay the cash sums due Miller in a timely fashion. The court entered judgment for Miller, quieting title to the real property in him free and clear from any adverse claim of the Stracks, and ordered the Stracks to return possession of the property to Miller and to pay him $500 per month for 64 months, plus 8% interest from the time each payment should have been made, as rental payment for the use of the property, with credit for the $32,000 that they had already paid.

The Stracks contend that the trial judge erred in denying specific performance of the unexecuted written "Contract for Deed." We disagree. This denial of specific performance was based upon the trial judge's factual finding that the unexecuted writing did not represent the agreement of the parties because it provided for a monthly installment purchase rather than a cash transaction. Findings of fact by the trial court will be overturned only if they are clearly erroneous.[1] A finding is clearly erroneous when upon consideration of the whole record we are left with the definite and firm conviction that a mistake has been made. *See, e.g., Curry v. Tucker,* 616 P.2d 8, 12 (Alaska 1980); *Hausam v. Wodrich,* 574 P.2d 805, 810 (Alaska 1978). Much of Miller's testimony concerning the cash nature of the transaction was disputed by evidence introduced by the Stracks. Carefully examining the record before us, and realizing that credibility choices are for the trier of fact to make,[2] we find no clear

---

**1.** Rule 52(a), Alaska Rules of Civil Procedure, provides in part:

"Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." The "clearly erroneous" standard is still to be applied when, as here, the trial court's findings of fact are adopted from those submitted by the prevailing party. *Curry v. Tucker,* 616 P.2d 8, 12 n.1 (Alaska 1980).

**2.** Determinations of credibility are for the trier of fact and generally will be accepted by the reviewing court. The fact finder sees the witnesses testify, hears the inflection of their voices and observes their relative candor in

error that requires us to reverse the trial court's determination that the unexecuted writing did not represent the agreement of the parties. It follows that there was no error in the refusal to order specific performance of the written document according to its terms.

■ The Stracks alternatively contend that the trial judge erroneously enforced a forfeiture and that he should have allowed them a grace period for compliance with the oral agreement. We agree. It is well settled in this jurisdiction that equity abhors a forfeiture, and we have frequently relieved a party therefrom. When the principles of equity and justice so require, we may refuse to enforce even an express forfeiture provision in a land sale contract. *Curry v. Tucker*, 616 P.2d 8 (Alaska 1980); *Moran v. Holman*, 501 P.2d 769 (Alaska 1972); *Jameson v. Wurtz*, 396 P.2d 68 (Alaska 1964); *Land Development, Inc. v. Padgett*, 369 P.2d 888 (Alaska 1962). Similarly, we may refuse to order immediate imposition of a judgment when it has the net effect of a strict forfeiture.

■ The ultimate aim in equitable proceedings is to save the respective parties harmless from loss or damage and, if just and equitable, to permit them each to have the benefit of their bargains. Thus, as this court has often stated, where adequate compensation can be made, equity will discharge the forfeiture upon such compensation being made. *Curry v. Tucker*, 616 P.2d at 13; *City of Valdez v. Valdez Development Co.*, 523 P.2d 177, 183 (Alaska 1974); *Moran v. Holman*, 501 P.2d at 771; *Jameson v. Wurtz*, 396 P.2d at 74.

■ Miller's intended benefit under this bargain was receipt of the purchase price. The Stracks have paid and Miller has accepted almost one fourth of the original contract price. Equity and justice require

that the Stracks be granted a fair and reasonable grace period within which to pay the balance of the purchase price and any other legitimate expenses which Miller may have incurred in connection with the preservation and maintainence of the property. We find that 90 days is a fair and reasonable grace period here. Miller himself testified that as of August 22, 1979, just three months before this suit was filed, he was willing to go along with the original agreement. The trial court could easily have computed the additional interest on the balance of the purchase price and given the Stracks a grace period to comply, so that Miller would have received the benefit of his bargain.

Additionally, this is not the type of case where the purchaser's history of performance has been so inauspicious or in such bad faith as to demand a forfeiture.[3] Given the existing uncertainty as to the time and manner of payments, the Stracks' partial performance through payment, possession, and improvement of the property, their continuing efforts to reach a mutually agreeable solution with Miller, and Miller's continuing acquiescence in various proposed alternatives and failure to indicate he would terminate the contract, we find that the trial court abused its discretion in declaring an immediate forfeiture to Miller of the Stracks' interest in the land. Under our disposition, Miller's rights are fully protected; for if the Stracks fail to pay the balance owing within 90 days, then, with the imposition of the judgment, their interest in the property would be entirely forfeited and Miller would regain possession. We desire simply to allow the Stracks a limited opportunity to salvage, if they can, a substantial interest in the property acquired during this five year period.

Thus, although we believe that the trial court properly denied specific performance

answering questions. *B. B. & S. Construction Co., Inc. v. Stone*, 535 P.2d 271, 274 n. 4 (Alaska 1975).

3. *See, e.g., Curry v. Tucker*, 616 P.2d 8 (Alaska 1980), where we held forfeiture to be appropriate where the purchaser made no good faith

efforts to fulfill his obligations, made no payments whatsoever in seven out of eight years of the contract, and made no effort to tender the purchase price or to otherwise fulfill his contractual obligations even after being served with notice of forfeiture.

of the written installment sale contract, we further hold that the court's judgment should have allowed a grace period for the performance of the oral agreement on a cash basis. Therefore, we affirm the decree insofar as it denies specific performance. The case is remanded for such further proceedings as are necessary to provide a grace period before the imposition of the judgment.

AFFIRMED, BUT MODIFIED AND REMANDED.