**Wesley S. ALLEN, Appellant,**

v.

**Barbara A. VAUGHN, Appellee.**

**No. S–12080.**

Supreme Court of Alaska.

June 22, 2007.

---

Ralph B. Cushman, Law Offices of James H. McCollum, LLC, Anchorage, for Appellant.

Sarah J. Tugman, Anchorage, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

## OPINION

FABE, Chief Justice.

## I. INTRODUCTION

Wesley Allen and Barbara Vaughn were divorced in 1996. Their property settlement called for the division of the proceeds from two parcels of real estate that both parties expected to sell soon. In 1997, when the parcels had not yet sold, Allen and Vaughn reached a new agreement under which each party would receive one of the parcels and buy the other's interest in that property. Because Allen's property was worth significantly more than Vaughn's, Allen owed Vaughn a balance of $18,040. The settlement agreement gave Allen until April 2002 to pay this amount and specified that "[i]f the note is not satisfied, ... Vaughn will maintain an interest of 50% in [Allen's] ... property." Despite the five-year payment period and a reminder from Vaughn approximately a month before the due date, Allen failed to pay the amount owed. When Vaughn rejected Allen's late attempts to pay, claiming that he had forfeited a fifty percent interest to her, Allen brought an action to quiet title to the property.

The superior court found that the parties intended the language at issue to operate as a forfeiture provision and determined that equity favored enforcement of the provision. On appeal, Allen argues that: (1) the court erred in looking beyond the four corners of the document to determine the parties' intent; (2) the circumstances of the case warrant the creation of an equitable mortgage, not the enforcement of a forfeiture provision; (3) Vaughn should not have received any of the proceeds from the subsequent sale of the property beyond the original amount owed by Allen; and (4) the trial court erred in awarding attorney's fees to Vaughn. Because equity does not favor a forfeiture and the contract provision at issue did not expressly provide for a forfeiture, we reverse the superior court's decision.

## II. FACTS AND PROCEEDINGS

### A. Background and 1997 Agreement

Allen and Vaughn were married in 1990. At the time of their marriage, Allen was a real estate broker and Vaughn was a hairdresser, but later in 1990, Vaughn became a licensed real estate agent. They divorced in 1996, and they agreed in their property settlement to divide evenly the proceeds from two parcels of real estate that they expected to sell in the near future. But the two properties—a residence in Palmer and a lot in downtown Wasilla—did not sell. In April 1997, with both properties still unsold, Allen and Vaughn met to draft a new agreement regarding these two properties. No attorneys were involved in drafting the agreement.

Under the 1997 agreement, Vaughn was to receive the Palmer residence and Allen was to receive the Wasilla lot, with each buying out the other's share of equity. Because they had built more equity in the lot allocated to Allen than in the property given to Vaughn, the amounts were offset, with Allen paying the difference. The agreement, which was in Vaughn's handwriting, provided for Allen's payment of this amount within five years:

1. Barbara A. Vaughn will receive $26,740.00 ... in exchange for her interest in the [Wasilla] property.

2. Wesley S. Allen will pay Barbara A. Vaughn $8,500 ... from the proceeds of the sale of [a separate property] as a down payment for this property.

3. The balance of $18,040 [1] ... is to be paid in full plus 5% interest per year on or before April 28, 2002.

---

1. Although the difference between $26,740 and $8,500 is $18,240, the parties' agreement stated

4. If this note is not satisfied, Barbara A. Vaughn will maintain an interest of 50% in the above described property.

Vaughn's interest in the property was transferred to Allen by quitclaim deed.[2]

Vaughn and Allen both testified about the drafting of the contract. According to Vaughn, they discussed each provision in detail, and Allen helped her with the wording. Vaughn claimed that she proposed the fourth paragraph and that she explained it to Allen as follows:

[Y]ou have never paid the bills, you have all of our property several times, many times, all of the time in foreclosure. There is nothing that you have done to show me that you will pay me this amount of money and so—and I'm giving you five years and if you do not pay me within that time frame, then I will just resume my interest in—my half interest in the property.

Vaughn testified that her understanding of the fourth paragraph was that if the debt was not paid by the deadline, "[t]he property would go half back into my name and it would be half mine. I would be the legal half owner of it." Allen acknowledged that he had promised to pay Vaughn to equalize the property distribution but maintained that there was no discussion or agreement that Vaughn would retain a fifty percent interest in the property if he failed to pay on time. Allen asserted that he understood the fourth paragraph to mean "that [Vaughn] will maintain an interest in the property until what I owe her is paid." Allen claimed that if he had known that the agreement contained a forfeiture provision, he would not have signed it.

In September 1997 Vaughn's attorney sent Allen a deed of trust note and escrow instructions. Although the agreement had already been recorded, Vaughn's attorney claimed that the proposed deed of trust "better set [ ] forth the intent of the parties and [was] more in line with the sort of document

title professionals ... are accustomed to working with." Allen did not respond.

After he received title to the property, Allen's only use of it was to place two railroad cars on it. Allen failed to pay the taxes on the property, and the Matanuska–Susitna Borough obtained a judgment of foreclosure in July 2001.[3] Allen testified that he was unable to pay the taxes at the time but that he believed he could redeem the property at any time during the ten years following the foreclosure. Vaughn ultimately paid to redeem the property and was issued a repurchase quitclaim deed by the City of Wasilla.

Approximately a month before the deadline, Vaughn called Allen to remind him of his obligation. Allen promised to pay but did not do so. On May 11, 2002—two weeks after the due date—Allen gave Vaughn a handwritten note promising to pay her $22,000 in exchange for "extend[ing] the agreement to July 1, 2002." Because of the five percent annual interest provision, this was less than the amount that had been due in April 2002. Vaughn did not respond to this offer. Further negotiations happened between the parties, culminating on June 16, 2003, when Allen offered to pay the entire amount due and to reimburse Vaughn for her tax payments on the property. This offer was also rejected by Vaughn.

## B. Procedural History

Allen brought an action to quiet title on July 3, 2003. Having heard testimony from both parties, the superior court determined that Allen's statements about his understanding of the agreement were "utterly without credibility." The court explained this finding in detail:

Mr. Allen is a real estate *broker*. It is inconceivable that given his training and experience, he would not carefully have reviewed the document before signing it, especially since he concedes that Ms. Vaughn raised her concerns about being

---

that the balance owed was $18,040.

2. Allen recorded the deed immediately, and Vaughn recorded the agreement in June 1997.

3. At that time, the owner of record was Studington Fitzroy Brown. Allen testified that he had transferred it to Brown "for safekeeping" during a bout of treatment for prostate cancer. Allen held an unrecorded deed transferring the property from Brown back to himself.

paid at the time he signed the agreement. Rather, the court accepts as credible Ms. Vaughn's testimony that Mr. Allen helped her write the agreement and that he knew full well that the intent was that he would forfeit [ ] 50% [of his] interest in the property if he did not pay what he owed by the due date. Given Mr. Allen's demeanor and manner of avoiding or putting off difficult questions on the stand, the court frankly cannot escape the feeling that Mr. [Allen] acceded to paragraph 4 in part because he had no real intention of paying Ms. Vaughn, he knew this paragraph was inartfully drafted, and he figured he could rely on the imprecise wording to escape forfeiture if Ms. Vaughn tried to enforce the agreement.

Based on its finding that the parties understood that a fifty percent interest would revert to Vaughn, as well as its reading of the fourth paragraph,[4] the superior court determined that the contract provided for forfeiture in the event of Allen's failure to pay.

Although the superior court conceded that forfeiture is generally a disfavored remedy, it held that the circumstances of this case— including the agreement's status as part of a property settlement instead of an arm's length bargain and the court's view that Allen would not "suffer a loss out of proportion to the benefit obtained by Ms. Vaughn if forfeiture is allowed"—justified enforcement of the agreement. The court therefore ruled that Vaughn had a fifty percent interest in the property. It then ordered the sale of the property, with the disputed portion of the sale proceeds to be held in escrow pending a final judgment.

In June 2005 the lot was sold for $191,716. Allen received $89,426, the amount to which he would be entitled under Vaughn's theory of the case, "following certain credits and debits associated with the encumbrances on the property and credit back for the $8,500 down payment ... with interest." Vaughn received $31,959, the amount to which she would be entitled under Allen's theory of the case. In September 2005 the court issued a final declaratory judgment that awarded the disputed sum of $50,581 to Vaughn. An attorney's fee award of $3,042.60 was partially funded by $3,000 that had been set aside for that purpose. This appeal followed.

## III. DISCUSSION

### A. Standard of Review

 We will not set aside a superior court's findings of fact unless those findings are clearly erroneous, and we give "due regard to the trial court's opportunity to evaluate the credibility of witnesses."[5] On questions of law, this court applies its independent judgment, "adopt[ing] the rule of law that is most persuasive in light of precedent, reason, and policy."[6] A trial court's award of attorney's fees is reviewable for an abuse of discretion.[7]

### B. It Was Error To Find that the Agreement Operated To Require a Forfeiture.

The trial court determined that the intent of the parties when drafting paragraph four was that Allen would immediately forfeit a fifty percent interest to Vaughn if he did not pay her on time:

> [T]he court finds the parties intended that Mr. Allen would immediately receive full title to Lot 5D and that paragraph 4 operated to forfeit to Ms. Vaughn the 50% interest in Lot 5D she had sold to him if Mr. Allen did not pay her on or before April 28, 2002.

---

4. The court acknowledged that the agreement was "not as precise as it could have been," but maintained that it "most certainly does not present the transaction as a loan from Ms. Vaughn to Mr. Allen," and does not "otherwise ... create any security interest in the property on behalf of Ms. Vaughn pending payment by Mr. Allen."

5. *Horton v. Hansen*, 722 P.2d 211, 215 (Alaska 1986) (quotations omitted); *see also* Alaska R. Civ. P. 52(a), which provides: "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses."

6. *Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

7. *Laidlaw Transit, Inc. v. Anchorage Sch. Dist.*, 118 P.3d 1018, 1038 (Alaska 2005).

The trial court made this determination based on the testimony of the parties at an evidentiary hearing.

Vaughn testified that she wanted to motivate Allen to pay her for the property, that she was willing to take the risk that the property would depreciate in value, and that she told Allen that if he did not pay her the money he owed her, she would resume her half interest in the property. Allen testified that he did not read the document carefully before signing it and understood paragraph four to mean that if he did not pay, then Vaughn would retain her fifty percent interest in the property until he paid her. Allen also testified that if he had known that he could possibly forfeit his fifty percent interest to Vaughn, he would not have signed the agreement.

The trial court did not find Allen's testimony to be credible and determined that, given Allen's experience as a real estate broker, he would have carefully reviewed the document. The trial court further found that Allen agreed to paragraph four because he had no intention of paying Vaughn and knew he could rely on the imprecise wording of paragraph four to escape forfeiture if Vaughn tried to enforce the agreement. The trial court therefore found that the parties intended paragraph four to operate to forfeit half of Allen's interest in the property to Vaughn in the event of nonpayment. The trial court also determined that it would be equitable for Allen to forfeit half of his interest in the property as a penalty for late payment.

Regardless of the trial court's findings on credibility and intent, we must still determine whether paragraph four creates an enforceable forfeiture provision. As we have previously recognized: "It is well settled in this jurisdiction that equity abhors a forfeiture, and we have frequently relieved a party therefrom. When the principles of equity and justice so require, we may refuse to enforce even an express forfeiture provision in a land sale contract." [8] And we have repeatedly held that a purchaser faced with forfeiture should be given time to cure a default.[9] For example, in *Land Development, Inc. v. Padgett,* we refused to enforce a clause in a land sale contract that provided that, in the event of non-payment, the seller would retain all of the buyer's payments as liquidated damages and the buyer would be required to vacate the property.[10] We affirmed the ruling of the trial court which gave the buyer time to pay the balance due on the contract.[11]

Although we have recognized that it may be appropriate to enforce an express forfeiture clause in some "extreme cases [where] the purchaser's history of performance is so inauspicious that equity not only allows a forfeiture, it demands a forfeiture," [12] this is not such a case. Here, the forfeiture clause was not express, and Allen made an attempt to cure his default less than one month after Vaughn asserted that Allen was trespassing on the property.

Other jurisdictions similarly disfavor forfeitures and have allowed opportunities to cure.[13] In *BankWest, N.A. v. Groseclose,* the South Dakota Supreme Court held that it would be "unconscionable" to allow repossession of land after default without providing the defaulting party an opportunity to cure the default.[14] And in *Lewis v. Premium Investment Corp.,* the South Carolina Supreme Court refused to enforce a clear forfeiture provision in an installment land contract, determining that it would be inequitable to enforce the forfeiture provision without a right to redeem.[15]

In this case, paragraph four does not clearly provide for forfeiture in the event of Al-

8. *Strack v. Miller,* 645 P.2d 184, 187 (Alaska 1982).

9. *Id.* at 187; *Moran v. Holman,* 501 P.2d 769, 770 (Alaska 1972); *Jameson v. Wurtz,* 396 P.2d 68, 75 (Alaska 1964).

10. 369 P.2d 888, 889 (Alaska 1962).

11. *Id.*

12. *Curry v. Tucker,* 616 P.2d 8, 13 (Alaska 1980).

13. *Lewis v. Premium Inv. Corp.,* 351 S.C. 167, 568 S.E.2d 361, 364 (2002); *BankWest, N.A. v. Groseclose,* 535 N.W.2d 860, 865 (S.D.1995).

14. 535 N.W.2d at 865.

15. 568 S.E.2d at 364.

len's default. And even if it did, it is unclear why, under the circumstances of this case, Allen should not have been allowed to cure the default within a month of Vaughn asserting that Allen was trespassing on the property.

Because forfeitures are disfavored and paragraph four does not explicitly provide for forfeiture, we decline to read paragraph four as a forfeiture provision regardless of the parties' intent. It was error to conclude otherwise.

The trial court may have believed that the nature of this agreement, as part of a divorce property settlement agreement, provided an unusual circumstance justifying forfeiture. The trial court emphasized that "[i]t is important to note at the outset that this agreement is not a typical arms-length real estate transaction. Rather, it is more properly viewed as an effort to implement a portion of the parties' divorce property settlement." Moreover, the trial court found that, because the agreement was drawn up by the parties after the original divorce and without the involvement of the attorneys, it was inappropriate to interpret the agreement as creating an equitable mortgage.

Settlement agreements that divide property in a divorce case are generally treated under general contract law theories and can be held invalid if there is fraud, duress, or undue influence.[16] A court also cannot enforce settlement agreements that are unconscionable or unfair.[17] But, in this case, there is no claim of fraud or unfairness in the settlement itself but merely a dispute as to what the agreement means and the intention of the parties regarding the agreement.[18] And there is thus no basis to find that the agreement should not be enforced as if it were an arms-length real estate contract.[19] Thus, although paragraph four was entered into as part of a divorce property settlement, it is still analyzed under general contract principles.

Rather than construe paragraph four as a forfeiture provision, we believe it should be understood as creating an equitable mortgage. A mortgage is "[a] lien against property that is granted to secure an obligation (such as a debt) and that is extinguished upon payment or performance according to stipulated terms."[20] The *Restatement (Third) of Property: Mortgages* defines a mortgage as "a conveyance or retention of an interest in real property as security for performance of an obligation."[21] Vaughn had an interest in the property, and while that interest was not clearly defined, it was an interest that was used to "secure an obligation" on Allen's part: the payment of money due Vaughn under their agreement. Given that Vaughn retained an interest in the property to secure the payment of the note, the agreement is properly viewed as an equitable mortgage.[22] And because it is an equitable mortgage, Allen had the opportunity to cure even after Vaughn elected to proceed to foreclose in order to regain her half-interest in the property.[23] Allen offered in June 2003 to pay Vaughn the full amount due under the contract, including the tax payments Vaughn made. And, indeed, Vaughn is entitled to the money originally due to her under the agreement, along with the payments she made to redeem the property from the tax

---

**16.** 1 BRETT R. TURNER, EQUITABLE DISTRIBUTION OF PROPERTY § 3:14 (3d ed. 2005).

**17.** *Id.*

**18.** While the trial court found that Allen knew the settlement provided for a forfeiture, had no intention of paying, and intended to rely on "imprecise wording" to escape forfeiture, Vaughn does not claim that Allen acted fraudulently in executing the settlement agreement, and the trial court did not find actual fraud on Allen's part.

**19.** Although Vaughn is correct that the terms of the settlement were intended to effect a fifty—fifty split of the marital property, each received a

separate parcel, and the remaining payment due from Allen to Vaughn was required to achieve an equal division.

**20.** BLACK'S LAW DICTIONARY 1031 (8th ed. 2004).

**21.** § 1.1 (1997).

**22.** An equitable mortgage is "[a] transaction that has the intent but not the form of a mortgage, and that a court of equity will treat as a mortgage." BLACK'S LAW DICTIONARY 1032 (8th ed. 2004).

**23.** *See* RESTATEMENT (THIRD) OF PROPERTY: MORTGAGES § 3.1(a) (1997).

foreclosure, and all associated interest. On remand, the trial court should determine the amount due to Vaughn, which will include any payments made when redeeming the property from foreclosure and the associated interest.[24]

## IV. CONCLUSION

For the reasons set forth above, we REVERSE and REMAND the case to the superior court.

24. Allen maintains that if this court reverses the trial court's judgment, it should also reverse its award of attorney's fees since that award is predicated on Vaughn's status as the prevailing party. Because we reverse the decision of the trial court, we remand the issue of attorney's fees.