*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| MARIA D. DUENAS-RENDON, | ) | |
| | ) | Supreme Court No. S-15596 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-12-06466 CI |
| v. | ) | |
| | ) | O P I N I O N |
| WELLS FARGO BANK, N.A., | ) | |
| Successor to Wells Fargo Home | ) | No. 7034 - August 14, 2015 |
| Mortgage, Inc., | ) | |
| | ) | |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, John Suddock, Judge.

Appearances: Swan T. Ching, Anchorage, for Appellant. Michael J. Parise and Michael B. Baylous, Lane Powell LLC, Anchorage, for Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

MAASSEN, Justice.

## I.     INTRODUCTION

A borrower sued her mortgage lender, claiming that its foreclosure on her home violated the terms of their contract. On appeal she argues that the lender waived its right to foreclose when it continued to accept monthly mortgage payments after recording a notice of default, leading her to believe that it no longer intended to

foreclose. The lender responds that it closely followed the contractual procedures for default and acceleration and that its acceptance of payments did not waive its right to foreclose in light of the parties' agreement permitting it to do so once the loan was in default. The superior court granted summary judgment to the lender.

The borrower appeals. She argues that the superior court erred in granting summary judgment and also that it should have addressed an outstanding discovery motion before deciding the case in the lender's favor. Finding no error, we affirm.

## II. FACTS AND PROCEEDINGS

### A. Facts

In 2003 Maria Duenas-Rendon and her then-husband Enrique Barajas purchased an Anchorage home for $50,000 with the help of a mortgage loan from Wells Fargo Bank[1] in the amount of $47,500. The terms of the loan were outlined in two documents: a promissory note and a deed of trust. It is undisputed that these two documents constitute the agreement between Duenas-Rendon and Wells Fargo.

#### 1. The parties' agreement

The promissory note provides that the borrowers will be in default if they "do not pay the full amount of each monthly payment on the date it is due." The promissory note has an acceleration clause authorizing the bank, on written notice of default, to require the borrowers "to pay immediately the full amount of Principal which has not been paid and all the interest that [the borrowers] owe on that amount," as well as expenses such as attorney's fees. The promissory note also provides that the bank's failure to invoke the acceleration clause in the event of a default does not waive its right to invoke it later.

---

[1] Duenas-Rendon's agreement was with Wells Fargo Home Mortgage, Incorporated; Wells Fargo Bank, N.A. is its successor by merger.

The provisions of the deed of trust are somewhat redundant but also more detailed. For example, the deed of trust gives the bank options on how to treat "any payment or partial payment" that is "insufficient to bring the Loan current": the bank may return the payment or accept it, though acceptance is "without waiver of any rights hereunder or prejudice to [the bank's] rights to refuse such payment or partial payments in the future." If the bank accepts a partial payment, it may apply the payment to the loan or hold it "until Borrower makes payment to bring the Loan current." If the borrowers do not bring the loan current "within a reasonable period of time," the bank may either apply the held funds to the loan "or return them to the Borrower."

The deed of trust also addresses acceleration of the loan. It requires notice to the borrowers that the bank intends to exercise its right to accelerate, and it specifies the notice's contents. It provides that "[i]f the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this [deed of trust] without further demand." It also describes the borrowers' right to have enforcement of the deed of trust discontinued and to reinstate the loan on certain conditions: that the borrowers pay all amounts that were due before acceleration, cure any other defaults, pay the expenses of enforcement, and give other reasonable assurances to the bank if requested. And it describes the bank's right to invoke either judicial or non-judicial foreclosure, to sell the property at public auction, and to apply the proceeds of sale to expenses and the remaining debt.

The deed of trust also has a general non-waiver provision. A section entitled "Borrower Not Released; Forbearance By Lender Not a Waiver" provides in part that "[a]ny forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments . . . in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy."

## 2. The loan history

Duenas-Rendon and Barajas made their monthly mortgage payments mostly on schedule for the first five years.[2] The couple separated sometime in 2006 or 2007, and Duenas-Rendon continued to occupy the home and make the payments. She failed to make payments in July, November, and December 2008, apparently in part because she wrote checks on a joint account that had been closed following her separation from her husband.[3] Wells Fargo sent an acceleration demand letter in September 2008 and another one in October 2008, but both letters were returned as undeliverable. Bank employees tried to reach the couple by telephone on several occasions but without success. In November 2008 Duenas-Rendon notified Wells Fargo that she had a new address in Oregon, and the bank sent an acceleration letter to the new address. The letter stated that the loan was in default and gave the required notice that Wells Fargo intended to invoke its right to accelerate the loan and initiate a foreclosure action if the default was not cured within 30 days. When the December deadline came and went, Wells Fargo referred the loan to the trustee for foreclosure.

Duenas-Rendon testified in her deposition that she did not receive the November 2008 letter giving her 30 days' notice of acceleration. She does concede, however, that she provided Wells Fargo with the Oregon address, that she received something from Wells Fargo in the mail at that address, and that she remained in Oregon

---

[2] Their payment in October 2003 included not just the amount due but also an $8,000 prepayment that reduced the principal but, under the terms of the promissory note, did not otherwise effect any "changes in the due date or in the amount of [the] monthly payments."

[3] Wells Fargo's records reflected that two payments were processed on December 16, 2008, but reversed a week later for insufficient funds.

until late November 2008. In December she gave Wells Fargo another new address, that of her sister's home in Anchorage.

On January 14, 2009, the trustee recorded a Notice of Default Under Deed of Trust announcing its intention to sell Duenas-Rendon's home at public auction on April 17. Duenas-Rendon was working in Dutch Harbor at the time and was largely out of touch. In the meantime, however, she arranged for her sister to make four monthly mortgage payments for her: on February 18, March 3, March 11, and April 3, 2009.[4] Wells Fargo processed all four payments but, due to the pending foreclosure, held the funds "in suspense" rather than applying them toward the loan. The superior court concluded that these four payments were all returned to the borrowers within weeks after they were made, though Duenas-Rendon disputed this.

The auction occurred as scheduled in April 2009, and the home was sold for the amount of the loan principal, $47,500. Duenas-Rendon received a check for $1,237.80 from the proceeds. She does not dispute that by the end of 2008, when Wells Fargo accelerated the note, she was three months behind in her payments. Nor does she dispute that the four payments made in 2009 were insufficient to cure the default, even if Wells Fargo had elected to apply them to the loan rather than holding them.

B.    Proceedings

In April 2012 Duenas-Rendon filed a complaint in superior court alleging breach of contract and defamation and seeking damages for lost equity and injury to her

---

[4]    Duenas-Rendon had made one other payment on January 6, 2009, after acceleration (December 16, 2008) and just prior to the January 14 notice of default. This 2009 payment does not play a part in the waiver issue on appeal because Duenas-Rendon's argument hinges on the bank's continued acceptance of payments after notice of default.

credit.[5] She asserted that the foreclosure was a breach of contract because she was not in default at the time it occurred: she claimed she made all required monthly payments to Wells Fargo, that Wells Fargo rejected certain payments without "justifiable reasons," and that Wells Fargo accepted a number of monthly payments after claiming default but refunded only two of them.

Both parties moved for summary judgment on the contract claim. Wells Fargo argued that regardless of whether it had returned the 2009 payments made after the notice of default, foreclosure was proper because the loan was unquestionably in default when accelerated, when referred to foreclosure, when the notice of default was recorded, and when the foreclosure sale occurred. Duenas-Rendon's cross-motion for summary judgment raised several theories, only one of which she maintains in this appeal: that Wells Fargo waived its right to foreclose by accepting the four monthly payments after the notice of default had been recorded, without advising her that it still intended to foreclose.

While the summary judgment motions were pending, and in response to Wells Fargo's assertion that it had returned all of the monthly payments made in 2009, Duenas-Rendon moved to compel production of written communications between the bank and herself from December 2008 to April 2009 that might reflect the payments' return. She also sought an order precluding Wells Fargo from arguing that it had returned the payments, should it fail to produce the proof she requested. In response, Wells Fargo produced a copy of a canceled check for $1,180 refunding the March 11 and April 3, 2009 payments and endorsed by both borrowers; it had no canceled refund checks for the other two 2009 payments, but it did provide affidavits from bank

---

[5] The superior court dismissed the defamation claim on statute of limitation grounds, and it is not at issue on this appeal.

employees and a loan history log to support its claim that it had placed all four 2009 payments "in suspense" before returning them to Duenas-Rendon at her address of record within a week or two of receipt.

At oral argument on the summary judgment motions, Duenas-Rendon conceded that she was two months behind on her payments at the time of foreclosure in April 2009 regardless of whether the four 2009 payments were applied to the loan.

The superior court granted summary judgment to Wells Fargo. As relevant to this appeal, the court held that Wells Fargo did not waive its right to foreclose. It concluded that "Wells Fargo did not apply the 2009 payments toward the loan [but rather] put them in a suspense account[,] and all indications are that it returned them to a borrower." It rejected Duenas-Rendon's argument that Wells Fargo waived foreclosure by accepting the 2009 payments without giving her additional notice that it still intended to foreclose. While stating that this was "a tragic case" because of the borrowers' loss of a residence and accumulated equity, the superior court also observed that Wells Fargo had tried persistently to reach the borrowers about their missed payments before proceeding with its contractual remedies. The court noted that with the sale "long past," there was no way for it to "wave an equitable wand" and reverse the process.

Duenas-Rendon moved for reconsideration and asked that the superior court rule on her pending motion to compel. The superior court denied reconsideration but invited Duenas-Rendon to "inform the court within ten days whether she wishe[d] an evidentiary hearing to attempt to establish that not all her post-notice-of-default mortgage payments were returned to her." She requested such a hearing and the court scheduled it, but Wells Fargo moved that it be vacated. The bank presented new evidence showing that it had issued refund checks to the borrowers for the February 18 and March 3, 2009 payments, the checks had never been negotiated, and the unclaimed funds had eventually been turned over to the State, from which Duenas-Rendon could

still attempt to claim them. On this unrefuted evidence the superior court vacated the evidentiary hearing and entered final judgment for Wells Fargo.

Duenas-Rendon appeals the superior court's grant of summary judgment in favor of Wells Fargo and its failure to grant her motion to compel.

## III. STANDARDS OF REVIEW

We review a superior court's order on summary judgment de novo.[6] We review its discovery rulings for an abuse of discretion.[7]

## IV. DISCUSSION

### A. Wells Fargo Did Not Waive Its Right To Foreclose By Accepting Monthly Payments After The Notice Of Default Was Recorded.

Duenas-Rendon's main argument on appeal is that the superior court, in its waiver analysis, failed to recognize the importance of the fact that Wells Fargo continued to accept her monthly mortgage payments after the notice of default had been recorded. She contends that the bank's conduct waived its right to foreclose because it "negated" the bank's prior notice that it intended to accelerate the loan and foreclose.[8] She relies primarily on a federal case, *In re Crystal Properties, Ltd.*,[9] to support this argument.

---

[6]     *Alaska Trademark Shellfish, LLC v. State, Dep't of Fish & Game*, 172 P.3d 764, 766 (Alaska 2007).

[7]     *Peterson v. Ek*, 93 P.3d 458, 463-64 (Alaska 2004).

[8]     Duenas-Rendon does not argue that Wells Fargo initially failed to give the required notice of its intent to accelerate and foreclose, but rather that once having given that notice and then acted inconsistently with it, the bank failed to give *further* notice that it still intended to pursue its contractual remedies. The adequacy of the November 2008 acceleration letter and the January 2009 notice of default is therefore not at issue on this appeal.

[9]     268 F.3d 743 (9th Cir. 2001).

*Crystal Properties* applied "the unquestionable principle that, even when the terms of a note do not require notice or demand as a prerequisite to accelerating a note, the holder must take affirmative action to notify the debtor that it intends to accelerate";[10] as the superior court put it, *Crystal Properties* shows that "a lender may not accelerate a note stealthily." Duenas-Rendon finds stealth in the fact that Wells Fargo was silent while accepting further payments from her, even sending her receipts without mentioning that it still planned to foreclose.

But the uncontroversial rule of *Crystal Properties* — that a lender must give notice before accelerating the loan — is satisfied in this case, where the bank's initial notices of acceleration and foreclosure are not challenged.[11] The question here, rather, is whether having once given proper notice, the bank can be held to have implicitly waived its announced course of action by its later conduct, specifically its silent acceptance and retention of the 2009 payments.

An "implied waiver may be demonstrated by either: (1) 'direct, unequivocal conduct indicating a purpose to abandon or waive the legal right,' or (2) 'acts amounting to an estoppel by the party whose conduct is to be construed as a waiver.' "[12] Under the high standard that applies to findings of implied waiver,[13] Wells

---

[10] *Id.* at 749-50.

[11] *See* note 8, above. We recognize that the rights to accelerate and to foreclose are not the same, and waiver of one would not necessarily mean waiver of the other. But by citing cases addressing the waiver of acceleration, Duenas-Rendon is clearly arguing that Wells Fargo's acceptance of monthly payments waived its right to foreclose.

[12] *Sengul v. CMS Franklin, Inc.*, 265 P.3d 320, 329 (Alaska 2011) (quoting *Milne v. Anderson*, 576 P.2d 109, 112 (Alaska 1978)).

[13] *Id.*

Fargo's acceptance of monthly payments does not meet either test for an implied waiver: it was not "direct, unequivocal conduct indicating a purpose to abandon or waive [its] legal right[]s" and it did not "amount[] to an estoppel."

First, Wells Fargo's acceptance of monthly payments cannot amount to "direct and unequivocal conduct" indicating a purpose to abandon its legal rights when the parties' agreement specifically addressed the situation and authorized the course Wells Fargo elected to take. Indeed, all the bank's actions were required or authorized by the provisions of the promissory note and the deed of trust: asserting its rights to accelerate and to foreclose, giving formal notice of its intentions, and accepting payments that were insufficient to bring the loan current but opting to hold them in suspense before returning them.

Second, an estoppel can occur only "when there is 'assertion of a position by word or conduct, reasonable reliance thereon by another party, and resulting prejudice.' "[14] "This is an objective test; 'neglect to insist upon a right only results in an estoppel' when a party's words or conduct 'would convey a message to a reasonable person that the neglectful party would not in the future pursue the legal right in question.' "[15] In this case, given the bank's contractual rights, its course of conduct was consistent with its continued exercise of those rights and could not have conveyed to a reasonable person that it was abandoning its contractual remedies.[16]

---

[14] *Id.* at 329 (quoting *Wausau Ins. Cos. v. Van Biene*, 847 P.2d 584, 588 (Alaska 1993)).

[15] *Id.* (quoting *Wausau*, 847 P.2d at 589).

[16] Seeing no "assertion of position" on which to base an estoppel, we need not address the other two elements of the estoppel test for implied waiver: reasonable reliance and resulting prejudice.

As Duenas-Rendon points out, a finding of implied waiver is not precluded by a contractual non-waiver provision.[17] But such a provision supports a finding of non-waiver unless one party's "unreasonable acquiescence" has lulled the other into inaction.[18] There is no evidence here that Wells Fargo acquiesced in any major deviations from the required payment schedule. It did not have a history of accepting late payments on the loan; to the contrary, it labeled each of the missed payments in 2008 a default and sent notices of its intent to accelerate in September, October, and November 2008 to the borrowers' address of record. When Duenas-Rendon failed to cure by the December 16 deadline, the debt accelerated without further notice as stated in the deed of trust. The notice of default, recorded in January 2009, invoked the foreclosure procedure that was also specifically authorized by the deed of trust. On these facts there is no "unreasonable acquiescence" on the part of the bank that could override the contractual non-waiver provision.

Duenas-Rendon bases her waiver argument not just on Wells Fargo's acceptance of her 2009 payments but also on its failure to return them. But she does not dispute the evidence on which the superior court apparently relied for its conclusion that there was no genuine issue of material fact on this point: that the borrowers actually received and endorsed a refund check for the March 11 and April 3, 2009 payments, and that the bank attempted repeatedly to refund the February 11 and March 3, 2009 payments but eventually turned the funds over to the State as unclaimed. Duenas-Rendon's argument on appeal is that the bank's efforts are irrelevant to a finding of waiver because "for the return to be valid, the returns must have been received by the

---

[17] *See Sengul*, 265 P.3d at 328.

[18] *Id.* (citing *Dillingham Commercial Co. v. Spears*, 641 P.2d 1, 8 n.10 (Alaska 1982)).

borrower." She compares this to the borrowers' obligations to make monthly payments, which are not deemed made until the bank receives them. But the bank's waiver of its legal rights must be implied from *the bank's* conduct,[19] and, regardless of whether and when Duenas-Rendon received the refund checks, the evidence does not support a contention that Wells Fargo retained the funds.

Finally, Duenas-Rendon cites several cases for the proposition that the enforcement of a forfeiture may be inequitable if it will cause a loss to the property owner that is out of proportion to the other party's claimed injury. In *Land Development, Inc. v. Padgett*, we affirmed a trial court's decision not to enforce "a typical forfeiture clause in a real estate sales contract" that would have resulted in the buyers' loss of substantial equity.[20] The trial court ordered that the buyers could retain the property if they paid the remaining balance of $2,435 within three months, having already paid at least $9,500.[21] We held this result to be "in accord with principles of equity and justice" because to allow the forfeiture "would cause a loss to the buyers all out of proportion to any injury that might be sustained by the seller."[22] We reached a similar result in *Williams v. DeLay*, citing *Padgett* for the proposition "that the trial court may refuse to enforce literally the forfeiture provisions of a real estate contract, for this is a matter of discretion which is directly related to the equities of the situation."[23] We affirmed the trial court's refusal to enforce a forfeiture clause when the buyers' unpaid balance on a

---

[19]     *See id.* at 329.

[20]     369 P.2d 888, 889-90 (Alaska 1962).

[21]     *Id.* at 889.

[22]     *Id.* at 889-90.

[23]     395 P.2d 839, 846 (Alaska 1964).

$33,000 contract was only $575.95, which they tendered into court as soon as a special master calculated it as the amount due.[24]

We need not revisit the holdings of *Padgett* and *Williams* any further in this case, since they were based on the court's equitable power to avoid a forfeiture. Although "[i]t is well settled in this jurisdiction that equity abhors a forfeiture,"[25] application of the principle generally means that a buyer is given the opportunity to cure a default.[26] The default in this case can no longer be cured. Duenas-Rendon's property was sold at public auction over six years ago; the forfeiture cannot be undone, which explains why, when Duenas-Rendon filed suit in 2012, she sought money damages and not an unwinding of the sale. As the superior court observed in its order on summary judgment, the sale was "long past" and it was not possible to "wave an equitable wand and resolve this matter." The rule of *Padgett* and *Williams* is inapplicable.

B.      **The Superior Court Did Not Abuse Its Discretion By Treating Duenas-Rendon's Motion To Compel As Moot.**

Duenas-Rendon contends that the superior court erred when, in granting summary judgment to Wells Fargo, it implicitly treated as moot her pending discovery motion seeking to compel production of correspondence that would prove Duenas-Rendon's receipt of the refunded 2009 payments. She argues that the superior court's failure to order the requested discovery led it to erroneously conclude in the summary judgment order that "all indications are that [Wells Fargo] returned [the 2009 payments] to [the] borrower"; whereas the evidence adduced later, when Wells Fargo moved to

---

[24]      *Id.* at 845-46.

[25]      *Curry v. Tucker*, 616 P.2d 8, 13 (Alaska 1980).

[26]      *See Allen v. Vaughn*, 161 P.3d 1209, 1213 (Alaska 2007) ("[W]e have repeatedly held that a purchaser faced with forfeiture should be given time to cure a default.").

vacate the post-summary-judgment evidentiary hearing, showed that the 2009 payments had *not* all been returned, because although the bank made repeated efforts, it eventually turned over funds for two of the payments to the State as unclaimed.

The superior court noted in its summary judgment order that this factual dispute had not yet been definitively resolved but did not affect its decision: "The parties dispute whether the bank has returned all 2009 loan payments, but the bank stands ready to do so if it is shown to have erred; such an error would not affect the viability of the foreclosure sale." We agree with the superior court's assessment. The promissory note and deed of trust did not require Wells Fargo to return partial payments that were insufficient to cure default before proceeding with foreclosure. Given that Duenas-Rendon was indisputably in default when Wells Fargo foreclosed, whether the 2009 payments were later returned to her was immaterial to the grant of summary judgment. The superior court did not abuse its discretion when it implicitly concluded that the discovery motion could be denied as moot.

## V.    CONCLUSION

The  judgment of the superior court is AFFIRMED.