NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

## THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| DONALD LEE ERBEY, | ) | |
| | ) | Supreme Court No. S-16979 |
| Appellant, | ) | |
| | ) | Superior Court No. 3PA-16-01045 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| CYNTHIA JANE ERBEY, | ) | AND JUDGMENT* |
| n/k/a CYNTHIA J. PICKARD, | ) | |
| | ) | |
| Appellee. | ) | No. 1734 – July 24, 2019 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Jonathan A. Woodman, Judge.

Appearances: Herbert M. Pearce, Law Offices of Herbert M. Pearce, Anchorage, for Appellant. Cynthia J. Pickard, pro se, Wasilla, Appellee.

Before: Bolger, Chief Justice, Winfree, Stowers, Maassen, and Carney, Justices.

## I.     INTRODUCTION

An ex-husband appeals the superior court's denial of his objections to its Findings of Fact and Conclusions of Law and Qualified Domestic Relations Order (QDRO), which distributed marital property pursuant to the parties' settlement agreement. Because the superior court failed to appropriately allocate the costs of maintaining survivor's benefits and life insurance after the husband is either terminated

---

\*     Entered under Alaska Appellate Rule 214.

from employment or retires, we remand for the appropriate allocation. We affirm all other aspects of the superior court's decision.

## II.    FACTS AND PROCEEDINGS

Donald and Cynthia Erbey married in July 1988 and permanently separated in December 2015; Cynthia filed for divorce in early 2016. They participated in an informal settlement negotiation and reached a property division agreement. In July 2017 the parties placed their agreement on the record in superior court. The attorneys each questioned their client to confirm that they understood and agreed with the terms of the settlement as documented in the Findings of Fact and Conclusions of Law that Cynthia's attorney had drafted before the hearing. The court was provided a copy, which it signed at the conclusion of the hearing after making several corrections during the hearing at the parties' request.

The Findings of Fact and Conclusions of Law stated that Cynthia would receive 50% of the marital share of Donald's Federal Employee Retirement System (FERS) pension "with full survivor's benefits, and [life insurance]." The "marital share" was defined to include "the pre-marital years of [Donald's] retirement . . . due to the fact that this was 'bought back' during the marriage using marital funds." The Findings of Fact and Conclusions of Law also defined the "marital share" as beginning on "the date of inception of [Donald's retirement plan] to the date of separation." Donald filed objections to the Findings of Fact and Conclusions of Law in October 2017.[1]

Cynthia filed a proposed QDRO for Donald's FERS pension and sent him a copy in November 2017. Less than a week later, the superior court signed the Amended Findings of Fact and Conclusions of Law, Decree of Divorce, and the

---

[1]    Although the court signed the Findings of Fact and Conclusions of Law at the July hearing, it was not distributed to the parties until September.

proposed FERS QDRO. The day after the court issued the FERS QDRO, Donald filed clerical and substantive objections to Cynthia's proposed QDRO. Because the superior court had signed it before Donald submitted his objections, Donald moved for reconsideration, arguing that the court misapplied the time limits and asking the court to vacate the QDRO based on his substantive objections. Cynthia filed a response, and in January 2018 the superior court granted Donald's motion in part, correcting two clerical errors. The court specifically noted Donald's substantive objections but found that they lacked merit in light of the parties' "express agreement." Cynthia submitted an amended FERS QDRO addressing the clerical errors, to which Donald reiterated his substantive objections. Again, the superior court noted Donald's objections but ruled they were without merit. The superior court issued the amended FERS QDRO in February 2018.

Donald appeals.

## III.   STANDARD OF REVIEW

"We construe property settlement agreements in divorce actions in accordance with basic principles of contract law," and review "[q]uestions of contract interpretation . . . de novo."[2] Where the terms of a property settlement are unambiguous, we "decide the meaning of the contract as a matter of law."[3]

"This case requires us to interpret the final property order that was intended to memorialize the parties' settlement agreement. The order was not intended to be the court's independent determination of how the property should be divided."[4] Accordingly, we apply "to the final property order the same review principles we apply

---

[2]     *Hartley v. Hartley*, 205 P.3d 342, 346 (Alaska 2009).

[3]     *Krushensky v. Farinas*, 189 P.3d 1056, 1060 (Alaska 2008).

[4]     *Id.* at 1060-61.

to contract disputes."[5]

## IV. DISCUSSION

### A. The Superior Court Did Not Err By Including Donald's Military "Buy Back" Credits In The Marital Share Of The FERS Retirement Benefits.

Donald argues that the superior court erred by including in the marital share of the FERS retirement benefits the military time he "bought back" during his federal employment. Paragraph 6(a) of the Findings of Fact and Conclusions of Law states: "The parties agree that the pre-marital years of [Donald's] retirement are included in this division due to the fact that this was 'bought back' during the marriage using marital funds." Donald argues that it was his "belief that the parties had agreed that the FERS QDRO . . . would only include his military time if, in fact, this time was 'bought back' during the marriage and marital funds were used to purchase this time." He claims that because the military time was not bought back during the marriage and marital funds were not used, that military time cannot be included in the marital share. He then asserts that he did not object to the language in paragraph 6(a) because he knew that *some* premarital time would be included as a result of his agreement to define the marital share of his FERS from the date of its inception, which was before he and Cynthia married. And he argues that neither the oral nor written findings provided for the inclusion of "military time that accrued prior to his date of inception."

But Donald ignores that he agreed to the language in the Findings of Fact and Conclusions of Law and that he is bound by this language unless it is ambiguous.[6]

---

[5] *Id.* at 1061.

[6] *See id.* at 1060 ("If contract language is unambiguous, we decide the meaning of the contract as a matter of law."). As a matter of law, an individual is bound by the agreed-to terms of a contract unless the contract is unenforceable on other

(continued...)

-4- *1734*

Contractual language is ambiguous if it is "reasonably subject to differing interpretation" after "viewing the contract as a whole and the extrinsic evidence surrounding the disputed terms."[7] The language here is not ambiguous: paragraph 6(a) clearly states that the premarital time was "bought back" and the superior court heard twice that the marital share included premarital time that was "bought back." The only premarital time "bought back" was the military time. Donald neither objected to nor sought to clarify this understanding further in his testimony. And when asked by the court if he had any questions either for the court or his attorney, Donald responded, "No, I don't, sir."

Additionally, Donald's argument that he did not object to the language in paragraph 6(a) because the date of inception necessarily included some premarital time lacks merit. Donald argues that he did not object to the language in paragraph 6(a) because the date of inception referred to in paragraph 6(b) was before the parties married and therefore some premarital time was necessarily included in the marital share of his FERS retirement plan. But the premarital time to which Donald is referring (the premarital years included after the inception date) was not "bought back"; rather, the premarital years included after the inception date were the years during which Donald initiated and conducted the buy-back, not the period of military time that he actually "bought back." Thus, the premarital time to which Donald is referring could not have been what was intended by the language in paragraph 6(a), which specifically refers to

---

**6** (...continued)
grounds, such as "fraud, duress, or undue influence"; such grounds are not present in this case. *Allen v. Vaughn*, 161 P.3d 1209, 1214 (Alaska 2007) ("Settlement agreements that divide property in a divorce case . . . can be held invalid if there is fraud, duress, or undue influence. A court also cannot enforce settlement agreements that are unconscionable or unfair." (footnote omitted)).

**7** *Hartley*, 205 P.3d at 347 (quoting *Zito v. Zito*, 969 P.2d 1144, 1147 n.4 (Alaska 1998)).

the premarital military time that was "bought back."

Because the language in paragraph 6(a) of the Findings of Fact and Conclusions of Law is not ambiguous, Donald is bound by the terms of his agreement and the superior court therefore did not err by denying his objection to the language in paragraph 6(a).

**B.**   **The Superior Court Erred By Requiring Donald To Pay Indefinitely For The Costs Associated With The Survivor Benefits And Life Insurance Benefits From His Employee Annuity.**

Donald next argues that the superior court erred by requiring him to pay the costs associated with Cynthia's share of the survivor benefits and life insurance benefits "for the entire duration of the benefit[s]."  He argues that if the QDRO remains as written, Cynthia will receive  more than 50% of the marital share of the benefits agreed to by the parties because "100% of the costs . . . are attributed to Donald."

Donald agreed to pay for the costs associated with Cynthia's share of the survivor and life insurance benefits "until such time as either [he is] terminated or . . . retire[s]." Cynthia confirmed her understanding that Donald was obligated to pay for such costs "until such time [as] either he's terminated or he's retired from the facility."  But the superior court's Findings of Fact and Conclusions of Law did not include either the agreed upon termination date of Donald's obligation to pay Cynthia's share of these costs or an allocation of them after Donald either retired or was terminated from his job.

The QDRO states that "Cynthia's interest [in her share of the survivor and life insurance benefits] shall be applied to Donald's monthly 'Gross Annuity' " and that she "is awarded the maximum possible former spouse survivor annuity . . . with costs to be paid from the employee annuity."  The plain meaning of this language does not include any time limit for this obligation and suggests that Donald must pay these costs

indefinitely. The QDRO therefore does not accurately reflect the limitation expressly agreed upon by the parties that Donald will only pay these costs "until such time as either [he is] terminated or . . . retire[s]."

Donald further argues that the FERS QDRO should "divide the expenses for the survivor's annuity and life insurance equally between the parties once Donald's employment terminates." But the parties did not specify in their agreement how these costs would be divided after Donald is either terminated or retires. We therefore remand to the superior court to limit Donald's obligation to pay the costs associated with Cynthia's survivor's benefits and life insurance to the time he is employed, and to equitably divide the costs of maintaining the survivor's benefits and life insurance benefits after Donald either retires or is terminated from his employment.

**C.      Designating Cynthia As The "Sole Surviving Spouse" In The Event That Donald Predeceases Her Was Harmless Error.**

Donald's final argument is that the FERS QDRO language also entitles Cynthia to more than 50% of the marital share because it designates her as the "sole surviving spouse" rather than "former spouse." This, according to Donald, creates a conflict in the event that Donald predeceases her. He argues that this language would preclude "any claims that may arise from a subsequent spouse" and "potentially provid[e] Cynthia with a greater portion of the benefits than simply the 'one half of the marital share' that was agreed upon by the parties."

Even if the superior court mistakenly classified Cynthia as a "surviving spouse" instead of "former spouse," Cynthia's award would not change. FERS requires that for a "former spouse to receive payments after the retiree's death, the retiree must elect, or the court order must provide for, a survivor annuity."[8] In this case, the superior

---

[8]      UNITED STATES OFFICE OF PERSONNEL MANAGEMENT, COURT-ORDERED

(continued...)

court order provided Cynthia a survivor annuity by stating that she would receive "one half of the marital share of Mr. Erbey's FERS retirement with full survivor's benefits and [life insurance]." Thus, even if the superior court had classified Cynthia as a former spouse, she still would be entitled to the survivor's benefits associated with the FERS account. And even if the superior court improperly designated Cynthia as "sole surviving spouse," this error was harmless because it had no effect on her entitlement.[9]

## V. CONCLUSION

We AFFIRM the superior court's decision except as it relates to allocating the costs associated with the survivor's benefits and life insurance benefits. We REMAND for the superior court to limit Donald's obligation to pay the costs associated with Cynthia's survivor's benefits and life insurance as provided by the parties' agreement and to equitably divide the costs for such benefits after Donald's employment is terminated or he retires.

---

(...continued)

BENEFITS FOR FORMER SPOUSES 4 (July 2014) available at https://www.opm.gov/ret irement-services/publications-forms/pamphlets/ri84-1.pdf; 5 C.F.R. § 831.645(c) (2019).

[9] Alaska R. Civ. P. 61 ("The court . . . must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.").